AETNA CASUALTY & SURETY COM-
PANY, a corporation, Plaintiff,

v.

Carl M. FAIRCHILD, John Francis Rich-
ards, Terry F. Kerr, Lana L. Kerr,
and/or Carl M. Fairchild and Carl O.
Fairchild, d/b/a Division I, American
Universal Insurance Company and May
Trucking Company, an Idaho corpora-
tion, Defendants.

and

Lela Robinson and Shanna
Christopherson,
Intervenors.

GRANITE STATE INSURANCE
COMPANY, a corporation,
Plaintiff in Intervention,

v.

AETNA CASUALTY & SURETY COM-
PANY, a corporation, Carl M. Fair-
child, John Francis Richards, and May
Trucking Company, an Idaho corpora-
tion, Defendants in Intervention.

Civ. No. 83–1509.

United States District Court,
D. Idaho.

Oct. 23, 1985.

R.B. Kading, Jr., Howard W. Carsman, Eberle Berlin Kading Turnbow & Gillespie, Boise, Idaho, for Aetna Cas. & Sur. Co.

Gregory R. Giometti, Quane Smith Howard & Hull, Boise, Idaho, for American Universal Ins. Co.

Charles F. McDevitt, Givens McDevitt Pursley Webb & Buser, Boise, Idaho, for May Trucking Co.

John C. Hohnhorst, Hepworth Nungester & Felton, Twin Falls, Idaho, for Robinson and Christopherson.

R.B. Rock, Kirk B. Helvie, Moffatt Thomas Barrett & Blanton, Boise, Idaho, for Granite State Ins. Co.

## MEMORANDUM OPINION

RYAN, District Judge.

## I. INTRODUCTION

This declaratory judgment action arises from an automobile accident occurring on September 28, 1981, in Lemhi County, Idaho. The accident involved a collision between a 1973 Kenworth tractor/trailer rig

and a passenger car. The truck was driven by Francis Richards, an employee of Carl M. Fairchild who was a passenger in the truck at the time of the accident. The driver of the car was killed in the accident and the passenger injured. The occupants of the car brought a personal injury suit in state court against Carl M. Fairchild and John Richards, as drivers of the vehicle, as well as May Trucking Company, an interstate motor carrier who had leased the truck from Fairchild. The state court granted summary judgment in favor of May Trucking Company holding May Trucking could not be liable for the conduct of either Richards or Fairchild at the time of the accident.

Jurisdiction is based upon diversity of citizenship. The plaintiff, Aetna Casualty & Surety Company (Aetna), as the insurance carrier for May Trucking, seeks a declaration that it is under no duty or obligation to defend the state court action on behalf of the remaining defendants, Fairchild and Richards, or to assume liability for any judgment which may be entered against those defendants. Aetna also seeks a declaration that Defendant American Universal Insurance Company (American) is obligated to defend and indemnify Fairchild and Richards in the state court action.

Plaintiffs in the state court action, Lela Robinson and Shanna Christopherson, have intervened seeking a declaration that both Aetna and American are obligated to defend and indemnify Fairchild and Richards, as well as a declaration that May Trucking is vicariously liable for the conduct of Fairchild and Richards. Intervenor Granite State Insurance Company (Granite) provides excess or umbrella coverage to May Trucking and seeks a declaration that it is not obligated to provide coverage to Fairchild, Richards or May Trucking. All parties have moved for summary judgment.

The pending motions for summary judgment raise three basic issues:

(1) If and to what extent the state court summary judgment in favor of May Trucking is binding on the parties in this action (and if not, the liability of May Trucking for the conduct of Fairchild and Richards);

(2) Whether Aetna and Granite are obligated to defend and indemnify Fairchild and Richards; and

(3) Whether American is obligated to defend and indemnify Fairchild and Richards.

## II. FACTS

The following facts are not in dispute. May Trucking is a corporation headquartered in Payette, Idaho, which is engaged in the interstate carriage of cargo for hire. May Trucking holds interstate transportational certification from the United States Interstate Commerce Commission (ICC). On May 26, 1981, May Trucking entered into a lease agreement entitled, "Owner/Operator Contract" with Carl M. Fairchild whereby May Trucking leased a 1973 Kenworth tractor and alloy trailer owned by Fairchild. The lease agreement generally provided May Trucking with the exclusive use, possession and control of Fairchild's truck. Fairchild and his employees were authorized to operate the rig in exchange for which Fairchild would share in the fees or commissions earned from such operations. This lease agreement remained in effect during all times relevant to this action.

In late September 1981, Fairchild drove the truck from May Trucking's business premises in Payette, Idaho, to his parents' home in Stevensville, Montana. According to Fairchild, the purpose for taking the truck to Stevensville was to perform repairs on the truck's engine. Fairchild informed May Trucking that this was the reason for removing the truck from Payette.

Fairchild's father, Carl A. Fairchild, was the owner of a business known as Division One, located in Stevensville, Montana. Division One engaged in the business of shipping precut log homes. Apparently in exchange for the repairs completed on the truck by his father, Fairchild and an employee, John Francis Richards, used the

1973 Kenworth to transport a precut log home from Alpine, Montana, to Ketchum, Idaho, on behalf of Division One.

After completing delivery of the logs, Fairchild and Richards, with Fairchild driving, began the return trip to Stevensville on State Highway 93. At a point north of Challis, Idaho, the parties changed drivers. At a point near Ellis, Idaho, the truck collided with a car driven by Russell Robinson. As a result of the collision, Robinson died and Shanna Christopherson, a passenger in the car, was injured. The accident occurred on September 28, 1981. At the time of the accident, the 1973 Kenworth carried the identification placards of May Trucking.

At the time of the accident, Aetna had in effect a trucker's policy of insurance issued to May Trucking and Granite had in effect an umbrella liability policy issued to May Trucking providing coverage in excess of that afforded by the Aetna policy.

Carl M. Fairchild was the named insured in a liability insurance policy issued by American, bearing effective dates May 13, 1981, to May 13, 1982. On September 28, 1981, neither the 1973 Kenworth tractor nor the flatbed trailer involved in the accident was listed as a covered auto under the American policy. On October 19, 1981, Fairchild's father requested American add the 1973 Kenworth to the policy. Fairchild's father, Carl A. Fairchild, did not inform American of the accident which had occurred on September 28, 1981, involving the 1973 Kenworth. Pursuant to Carl A. Fairchild's request and upon his representations that Division One was a certified interstate motor carrier, American added the 1973 Kenworth truck to the policy and issued public liability endorsements to comply with the insurance requirements of the ICC regulations. Neither Carl M. Fairchild nor Carl A. Fairchild ever notified American of the occurrence of the accident on September 28, 1981. There is no dispute, however, that Carl M. Fairchild was aware of the accident since he was a passenger in the truck when it occurred and was arrested while driving the vehicle shortly afterward.

For a considerable time after the accident, Fairchild and Richards maintained that they had not been involved in any accident on September 28, 1981. In fact, Richards' defense to criminal charges brought as a result of the accident was that he had not been involved in any such accident. Richards was subsequently convicted by a jury of involuntary manslaughter stemming from the September 28, 1981, accident.

## III. COLLATERAL ESTOPPEL EFFECT OF THE STATE COURT SUMMARY JUDGMENT

The collateral estoppel effect of a state court judgment in a subsequent diversity action brought in federal court is generally determined by the law of the state in which the judgment is entered. *See* 18 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure:* Jurisdiction § 4472 (1981). Idaho has adopted the Restatement (Second) of Judgments' definition of collateral estoppel (issue preclusion). *Carpenter v. Double R Cattle Company, Inc.,* 105 Idaho 320, 669 P.2d 643 (Ct.App.1983); *see also Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct.App.1983).

■ The Restatement (Second) of Judgments § 27 (1980) provides:

Issue Preclusion—General Rule

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

The court finds that the summary judgment entered in the state court is not a "final judgment," and therefore, the summary judgment granted by the state court is not binding on the parties in this action.

Rule 54(b) of the Idaho Rules of Civil Procedure provides that the entry of partial summary judgment will be a final judgment only when expressly so certified by

the trial court. In the absence of such certification, the entry of partial summary judgment does not terminate the action as to any of the claims or parties and leaves the decision open to revision at any time before the entry of judgment adjudicating all claims of all parties. Idaho R.Civ.P. 54(b). Because the state court decision remains subject to revision and does not terminate those claims which are the subject of the summary judgment, entry of the partial summary judgment does not constitute final judgment for purposes of collateral estoppel.

In *Dawson v. Mead,* 98 Idaho 1, 557 P.2d 595 (1976), the Idaho Supreme Court held that an order granting partial summary judgment is not a final judgment for purposes of res judicata because such a ruling, if uncertified, is subject to later revision under Rule 54(b). *Id.* at 3, 557 P.2d at 597. While the facts in *Dawson* suggest the trial court may have simply exercised its ability to revise a previously entered partial summary judgment, and therefore, the doctrines of collateral estoppel or res judicata were not strictly applicable, the decision does evidence the Idaho Supreme Court's recognition that the requirements of Rule 54(b) must be met for the entry of final judgment as applied to the doctrines of collateral estoppel and res judicata.

Several other factors support the conclusion that the state court's partial summary judgment is not a final judgment. In *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the United States Supreme Court stated:

Under contemporary principles of collateral estoppel, this factor [absence of appellate review] strongly militates against giving an acquittal preclusive effect. See Restatement (Second) of Judgments § 68.1 (Tent Draft No. 3, 1976) (denying preclusive effect to an unreviewable judgment).[18]

estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted.

*Id.* at 23, 100 S.Ct. at 2007. While the *Standefer* decision was a criminal case whose holding is not directly applicable to this action, the Court emphasized the importance of appellate review in bolstering the underlying confidence in any decision made in the initial litigation. The same concern is reflected in the Ninth Circuit's decision in *Luben Industries, Inc. v. United States,* 707 F.2d 1037 (1983). The court stated:

The District Court in the present case stated that the *Bristol* [*Corp. v. U.S.,* CV–78–1759 FW (C.D.Cal. May 22, 1984)] interlocutory opinion should not be given preclusive effect because "[a]s an interlocutory order it is subject to free revision by the court on its own motion or on motion of any party at any time before judgment." Furthermore, although the *Bristol* opinion does not appear to be tentative, it could not have been the subject of an appeal at the time the instant case was decided in the District Court. We are satisfied that the District Court acted well within its discretion in determining the *Bristol* memorandum was not sufficiently firm to give it collateral estoppel effect.

Moreover, we are convinced that the Government did not have a "full and fair opportunity to litigate" its claim because it could not appeal the interlocutory memorandum in *Bristol.*

*Id.* at 1040. In this case, the state court ruling is not appealable under Rule 54(b), thus undermining any conclusion that the state court decision is substantially correct.

Finally, three exceptions to the general rule of issue preclusion recognized by the Restatement (Second) of Judgments are applicable. First, the party against whom preclusion is sought in this case could not, as a matter of law, have obtained review of the judgment in the state court action. Restatement (Second) of Judgments § 28(1)

---

18 This is not to suggest that the availability of appellate review is always an essential predicate of estoppel. See *Johnson Co. v. Wharton,* 152 US 252, 38 L Ed 429, 14 S Ct 608 (1894); see generally 1B J Moore & T Currier, Moore's Federal Practice ¶ 0.416[5] (2d ed 1974). The

(1980). Second, the issue is one of law and a new determination is warranted to avoid an inequitable administration of the laws. Restatement (Second) of Judgments § 28(2)(b) (1980). This exception is applicable because the state court rejected well-established federal law imposing liability on ICC certified carriers for accidents involving leased vehicles whether or not those vehicles were being used on carrier business. See discussion *infra* at page 1250. Third, there is a clear and convincing need for a new determination of the issue because of the potential adverse impact of the determination on the public interest or the interest of persons not themselves parties in the initial action. Restatement (Second) of Judgments § 28(5)(a) (1980). There can be no question that the effect of the state court's decision on the motoring public in Idaho is both adverse and substantial. The decision effectively represents a step backward to the time when common law rules of agency governed the liability of interstate carriers. Congress has made it abundantly clear that the traditional common law rules of agency no longer govern interstate carrier liability. Recognition of the state court decision by this court would thwart the clear intent of Congress and adversely impact the motoring public in the State of Idaho.

This court is neither required to give collateral estoppel effect to the state court's partial summary judgment, nor would the interests of justice be served by such an estoppel.

## IV. LIABILITY OF MAY TRUCKING

██ There is now little doubt that the provisions of the Interstate Commerce Act and the regulations promulgated thereun-

der impose liability on May Trucking as a certified lessee/interstate carrier for any accidents involving a vehicle under lease to May.[1] *See* 49 U.S.C. §§ 10321(a) (1982), 10927(a)(1) (1982), 11107(a) (1982), and 49 C.F.R. §§ 1043.1 (1984), 1057.12(1) (1984); *e.g. Price v. Westmoreland*, 727 F.2d 494 (5th Cir.1984); *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir.1983); *Carolina Casualty Insurance Co. v. Insurance Company of North America*, 595 F.2d 128 (3d Cir.1979); *Wellman v. Liberty Mutual Insurance Co.*, 496 F.2d 131 (8th Cir.1974). The Tenth Circuit's decision in *Rodriguez v. Ager* reviews not only the case law in support of this proposition, but also those few cases which have rejected statutorily imposed liability. In its discussion of those cases refusing to adopt the theory of statutory liability, the Tenth Circuit found those cases unable to cite precedential authority in support of their conclusions, nor were those conclusions based upon sound reasoning. This court is persuaded by the Tenth Circuit's analysis rejecting the minority view and finds that May Trucking is subject to statutorily imposed liability for the accident which is the subject of this action.

██ May Trucking is a named insured under the Aetna policy, and therefore, Aetna will be obligated to defend and indemnify May Trucking in any action arising from the accident. The Aetna policy does not expressly provide coverage for this statutorily imposed liability. However, the policy was issued pursuant to and in compliance with 49 C.F.R. § 1043 (1984).[2] Similarly, Granite is obligated to indemnify May Trucking as a named insured in the umbrella policy issued to May Trucking.

---

1. The parties do not dispute that the 1973 Kenworth tractor was under lease to May Trucking at the time of the accident, nor is there any dispute as to the fact that May Trucking held and maintained ICC certification during all times relevant to this action.

2. Title 49 C.F.R. § 1043.1 (1984) requires an insurance policy issued to a motor carrier subject to the provisions of the Interstate Commerce Act include an endorsement providing

for public liability coverage. While the Aetna policy issued to May Trucking did not include this endorsement, Aetna does not dispute that the policy was issued and filed with the ICC in an effort to comply with the statutory insurance requirements. Consequently, Aetna concedes the terms of the required endorsement are implicitly included in the policy even though that endorsement was not physically attached to the policy.

## V. COVERAGE OF FAIRCHILD AND RICHARDS UNDER THE AETNA POLICY

### A. *Statutory Coverage*

Defendant American and Intervenors Robinson and Christopherson argue the policy underlying the public liability provisions of the Interstate Commerce Act and regulations governing interstate motor carriers mandate Fairchild and Richards be considered insureds under the Aetna policy issued to May Trucking. Notwithstanding intervenors' conclusion that "it is exceedingly clear that the cases and decisions involving identical or similar facts, and identical or similar insurance policy provisions, uniformly require the conclusion that the Aetna policy provided coverage to Fairchild and Richards," only one case has been cited in support of this proposition which is truly on point. *See Cosmopolitan Mutual Insurance Co. v. White*, 336 F.Supp. 92 (D.Del.1972). While many courts have adopted the position that the lessee/carrier is liable for the conduct of an owner/operator as long as the truck is being operated under lease, few cases have addressed the issue of the lessee/carrier's insurance policy providing direct coverage to the owner/operator and only one case has held such coverage exists.[3]

The basis for the court's decision in *Cosmopolitan* is a determination that the ICC regulations require a particular construction of the language in the carrier's insurance policy. That court interpreted "exclusively in the business of the insured" as being expanded by the ICC regulations to include any operation of the truck while it is still under lease (meaning the lease has not been effectively terminated).

Whereas, Aetna's coverage of May Trucking is based upon the statutorily imposed liability of May Trucking for Fairchild and Richards' conduct, the court in *Cosmopolitan* held that the language of the lessee/carrier's insurance policy provided direct coverage for the conduct of the lessor/owner. This was accomplished through the expansive reading of the language of the insurance contract between the insurance company and the lessee/carrier. Such an expansive interpretation was justified by the Delaware district court's determination that it was necessary to effectuate the policies underlying the control and insurance requirements of the ICC regulations. This analysis is not based upon sound logic, nor is the extension of coverage beyond the lessee/carrier to include a lessor/owner (not otherwise covered by the carrier's insurance policy) necessary to effectuate the policies underlying the statutorily imposed control and insurance requirements.

In *Wellman v. Liberty Mutual Insurance Company*, 496 F.2d 131 (8th Cir. 1974), the court analyzed the *Cosmopolitan* decision and noted the error in the analysis used in that case. The Eighth Circuit stated:

> We cannot accept this logic as it relates to insurance coverage. The fact that an owner-operator displays the carrier's permit number while hauling an unauthorized load for a company other than the I.C.C. carrier does not make the trip one "exclusively in the business" of the insured, *although the insured motor carrier remains liable to third parties during the entire term of the vehicle lease.* The language of the insurance policy must be given its ordinary meaning unless good reason appears for doing otherwise. The relevant I.C.C. regulation on insurance, 49 C.F.R. § 1043, contains no provision which would require a motor carrier specifically to carry insurance affording liability coverage for judgments rendered solely against an owner-operator of a vehicle leased to the motor carrier. In the absence of such a provision, we think it unreasonable to apply 49 C.F.R. § 1057.4 and the public

---

**3.** The court is aware of only three cases which address this issue. *Cosmopolitan Mutual Insurance Co. v. White*, 336 F.Supp. 92 (D.Del.1972); *Wellman v. Liberty Mutual Insurance Company*, 496 F.2d 131 (8th Cir.1974); *Carolina Casualty Insurance Co. v. Insurance Company of North America*, 595 F.2d 128 (3d Cir.1979). All three cases are discussed *infra*.

policies of the Interstate Commerce Act, as a gloss to the exclusionary provisions of the insurance policy in this case. *We do not think that such broad coverage could reasonably have been contemplated by the parties when they formed their insurance contract.... It is one thing to hold that a motor carrier is absolutely liable—based on the Interstate Commerce Act—for injuries resulting from the negligent operation of vehicles leased to it, but it seems an unjustified and illogical leap to hold that an insurance company—whose sole obligation rests on contract—should be bound to pay a judgment for others who are not mentioned in the I.C.C. insurance regulation (49 C.F.R. § 1043.1), and who are specifically excluded by the language of the policy.*

*Id.* at 138–39 (emphasis added) (footnotes omitted).[4]

In a similar context, the Third Circuit Court of Appeals made the following observations:

[T]he pertinent question is whether the federal policy of assuring compensation for loss to the public prevents courts from examining the manner in which private agreements or state laws would otherwise allocate the ultimate financial burden of the injury.

. . . .

While the lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines ... or under contracts allocating financial risk among private parties.... [W]here the case is "concerned with responsibility as between insurance carriers" and not with the federal policy of

protecting the public, "I.C.C. considerations are not determinative" and a court should consider the express terms of the parties' contracts.... [32]

32. Accordingly, even though the tractor-trailer accident there occurred during the term of the lease, analysis of the insurance contracts led to the conclusion that the lessor's insurer expressly extended coverage to the loss and thus should bear financial responsibility for it. *Accord, Wellman v. Liberty Mutual Insurance Co.,* 496 F.2d 131, 139 (8th Cir.1974) (ICC regulations may not be read into insurance contract to require lessee's insurer to pay judgment against lessor, whom the contract had expressly excluded from coverage); *see Consolidated Systems, Inc. v. Allstate Insurance Co.,* 411 F.2d 157 (5th Cir.1969) (lessee's insurer not estopped by federal regulations to deny primary coverage as against lessor's insurer); *cf. Carolina Casualty Insurance Co. v. Pennsylvania Thresherman's & Farmers Mutual Casualty Insurance Co.,* 327 F.2d 324, 326 (3d Cir.1964) (state motor carrier financial responsibility law not controlling in action between two insurers). *The general principle upon which these cases rest—that a court may give effect to otherwise existing allocations of financial responsibility where the goal of protecting the injured public has already been fulfilled—appears to find affirmance in Transamerican.* There the Supreme Court held that "[a]lthough one party is required by law to ... bear the consequences of any negligence, the party responsible in law may seek indemnity from the party responsible in fact," pursuant to a hold-harmless agreement. [*Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*] 423 U.S. [28] at 40, 96 S.Ct. [229] at 235 [46 L.Ed.2d 169 (1975)].

*Carolina Casualty Insurance Co. v. Insurance Company of North America,* 595 F.2d 128, 138 (3d Cir.1979) (quoting *Allstate Insurance Co. v. Liberty Mutual Insurance Co.,* 368 F.2d 121, 125 (3d Cir. 1966)) (emphasis added) (footnotes omitted). These cases provide strong support for the proposition that where the goal of protecting the injured public has been achieved through the imposition of vicarious liability on the lessee/carrier, a court may give

---

4. It must be noted that earlier in its decision, the *Wellman* court stated that the reasoning of the *Cosmopolitan* decision and similar cases justified construing a general "persons insured" section of the lessee/carrier's policy broadly to include as permissive use any operation of the

subject vehicle so long as the lessee/carrier's ICC permit numbers were displayed on that vehicle. This statement is inconsistent with the court's subsequent holding, noted above, and in any event, was unnecessary to the court's decision and is *obitur dictum.*

effect to the contractual allocations of financial responsibility.[5]

■ The analysis used by the court in *Cosmopolitan* suffers from an additional flaw. That case relies upon the terms of the contract of insurance between the lessee/carrier and its insurance carrier. Yet the terms of this contract have absolutely no bearing on the question of who will be *liable* to a member of the public injured as a result of the negligent operation of a vehicle under lease to the carrier. That question is clearly and in a straightforward manner answered by 49 U.S.C. § 11107(a) (1982) and 49 C.F.R. § 1057.12(d) (1984). When the carrier's vicarious liability created by these provisions is combined with the insurance requirements of 49 U.S.C. § 10927(a)(1) (1982) and 49 C.F.R. § 1043(1)(a) (1984), the statutory goal of protection of the motoring public is achieved.[6] The only relevance the terms of a contract of insurance have to this determination is that they must satisfy the regulatory bonding requirements prior to issuance of ICC certification. It necessarily follows that where, as here, the carrier has valid ICC certification, the terms of the contract of insurance have no bearing whatsoever on the statutorily imposed liability. Where ICC certification has been granted, the ICC carrier's insurance policy, by definition, provides coverage for statutorily imposed vicarious liability on the part of that carrier.

The only purpose served by resorting to what can only be described as a tortured interpretation of the insurance contract is to include the owner/operator and his employees with the lessee/carrier's coverage, thus, guaranteeing two defendants (but only one insurer) with insurance coverage amenable to suit by the injured person, rather than one. What little benefit, if

any, might be achieved by providing two insured defendants subject to suit, can be arrived at only by blatantly changing the terms of the contract between insured and insurer. This is simply insufficient justification for undermining the consensual undertaking of rights and duties by contracting parties—the basic foundation of contract law.

■ The court finds the policies upon which the control and insurance requirements of the ICC regulations are based will not transform the contract of insurance entered into between Aetna and May Trucking into a contract of insurance between Aetna and Carl M. Fairchild. If coverage is to be extended to Fairchild under the Aetna policy, it must be done so under the plain language of that policy.

B. *Liability based upon the contract of insurance.*

It is well-established in Idaho that the language of an insurance contract, in the absence of ambiguity, must be construed as any other contract and understood in its plain, ordinary and proper sense according to the meaning derived from the plain wording of the contract. *Juker v. American Livestock Insurance Co.*, 102 Idaho 644, 637 P.2d 792 (1981). Part IV, subsection D, of the Aetna policy enumerates what persons are insured under that policy. If a person falls within any one of the subsections D(1)–(5), they are an insured under the policy (with the exception of several specific exclusions not applicable here). Only three of the five subsections are applicable in this case:

D. WHO IS INSURED.

1. You are an insured for any covered auto.

---

5. This, of course, presupposes May Trucking's vicarious liability for the accident. Realistically, such liability as it might benefit the state court plaintiffs (injured public) is nonexistent because the state court has ruled such vicarious liability does not attach. However, the state court's misinterpretation of the law in this regard cannot provide a sound basis for extending insurance coverage to persons not otherwise covered. Further, this court is confident the

state trial court's error will be corrected on reconsideration or an appeal.

6. Title 49 C.F.R. § 1043.1 (1984) only requires public liability insurance coverage for "final judgment recovered against any such motor carrier...." The regulations do not require insurance coverage for the lessor/owner.

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:

. . . .

4. The owner or anyone else from whom you hire or borrow a covered auto which is not a trailer is an insured while the covered auto:

 a. Is being used exclusively in your business, and

 b. Is being used over a route or territory you are authorized to serve by public authority or on its way to that route at your request.

### 1. *Fairchild and Richards as Named Insureds*

■ "You" as used in Section D(1) includes all named insureds listed in special No. 1. Special No. 1 provides that owners/operators are named insureds "while actually operating, pursuant to the lease contract with May Trucking Company." Even though the owner/operator contract between May Trucking and Fairchild does not expressly prohibit Fairchild's use of the truck absent May Trucking's authorization, such a prohibition is implicit in a number of the provisions of the contract.

Paragraph 1(A) provides: "Contractor shall furnish to Carrier, *exclusively* during the term of this agreement, the [1973 Kenworth]...." (emphasis added) Further, paragraph 2(A) provides: "During the entire term hereof, the sole possession, responsibility for, and control of the vehicular equipment described hereinabove shall reside in Carrier." The clear import of these provisions requires the owner/operator to obtain authorization from May Trucking prior to using the truck for any purpose. Absent such authorization, the truck is not being used "pursuant to the lease contract with May Trucking Company." As noted below, an issue of fact exists as to whether the Fairchilds had permission or authorization to use the truck.

### 2. *Permissive use.*

Part IV, paragraph D(2) of the Aetna policy provides coverage to Fairchild if he was using the truck with May Trucking's permission. In Idaho, such permission may be either express or implied. Idaho Code § 49–1521(b)(2); *Farm Bureau Mutual Insurance Company of Idaho v. Hmelevsky*, 97 Idaho 46, 539 P.2d 598 (1975). Although Carl M. Fairchild's deposition testimony is conflicting, he does state that he informed the dispatcher of his trip to Ketchum and that May Trucking did not object to that trip. From this it might be concluded that May impliedly gave Fairchild permission to proceed on the trip to Ketchum.

Aetna has submitted both deposition and affidavit testimony indicating May Trucking had no knowledge of Fairchild's trip to Ketchum. Consequently, a dispute of fact exists as to the existence of permission, express or implied, given by May Trucking to Fairchild to proceed with a load of logs to Ketchum.

### 3. *Use exclusively in May Trucking's business.*

■ Part IV, paragraph D(4) provides that anyone from whom May Trucking hires the use of a tractor is an insured so long as the tractor is being used exclusively in May Trucking's business. While there may be a dispute of fact as to Fairchild's having implied permission to make the haul to Ketchum, there is no dispute but that Fairchild proceeded on his own business and was not, therefore, engaged exclusively in the business of May Trucking. As a result, Fairchild is not an insured under this provision of the Aetna policy.

### VI. COVERAGE OF FAIRCHILD AND RICHARDS UNDER THE GRANITE POLICY

■ Potential coverage for Fairchild and Richards can be found in the Granite policy in only two respects. First, as "any person ... to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is af-

forded by this policy, but only in respect of operations by or on behalf of the Named Assured...." Granite policy, definitions, paragraph 1(b). Coverage under this provision, like the Aetna policy, requires an interpretation of the language "operations by or on behalf of the Named Assured." As noted earlier, the purpose for the bonding requirements of the regulations governing interstate motor carriers is satisfied by imposing liability on May Trucking and, therefore, must not be utilized in interpreting the insurance contracts. Fairchild was not operating by or on behalf of May at the time of the accident. Hence, Fairchild and Richards are not covered under paragraph 1(b) of the Granite policy.

Second, paragraph 1(c) of the definitions section provides coverage for "any additional assured (not being the Named Assured under this policy) included in the underlying insurances...." This leads back to the Aetna policy as the underlying insurance—if Fairchild and/or Richards is/are covered there as permissive users, they will also be covered under the Granite policy.

## VII. COVERAGE OF FAIRCHILD AND RICHARDS UNDER THE AMERICAN POLICY

 Carl M. Fairchild was the named insured under a policy issued by American in effect at the time of the accident. This coverage is generally limited to certain vehicles. The 1973 Kenworth tractor involved in the accident was not added to Fairchild's policy with American until October 19, 1981, some three weeks after the accident. Consequently, if coverage under the American policy exists, it must exist under the public liability endorsement issued December 3, 1981, antedated to become effective July 1, 1981. There is no question that Carl M. Fairchild is covered by the American policy for the accident *if*

the public liability endorsement was in effect at the time of the accident.

It appears to be well-established that: [W]here one applies for insurance knowing that a loss has already occurred, conceals this fact, and procures a policy to be antedated so as to cover the period when the loss did occur, the policy is void because of the fraud or concealment.... 4 Appleman, Insurance Law and Practice § 2291 (1969); 43 Am.Jur.2d, Insurance, § 328 (1969); Annot., 132 A.L.R. 1325 (1941).

*Aetna Casualty & Surety Co. v. Condict,* 417 F.Supp. 63, 71 (S.D.Miss.1976). Fairchild's failure to inform American of the occurrence of the accident, therefore, renders the antedated public liability endorsement void.[7]

## VIII. CONCLUSION

Having determined that the parties to this action are not bound by the determinations made by the state court in its order granting partial summary judgment in favor of May Trucking, the court finds May Trucking is liable, as a matter of law, for any negligence on the part of Fairchild and Richards which may have caused the accident occurring on September 28, 1981. 49 U.S.C. §§ 10321(a) (1982), 10927(a)(1) (1982), 11107(a) (1982), and 49 C.F.R. §§ 1043.1 (1984), 1057.12(1) (1984), and cases cited at page 1250 *supra.*

The policy of liability insurance issued by Aetna and Granite to May Trucking does not extend coverage to Fairchild or Richards for the accident occurring on September 28, 1981, unless May Trucking is found to have given its permission, either express or implied, for Fairchild's use of the truck at that time.

The court makes no findings regarding the potential coverage of Richards under either the Aetna or Granite policy should it be determined that only Fairchild had per-

---

**7.** Subsequent to oral argument in this matter, Aetna submitted an affidavit indicating American had knowledge of the accident prior to issuance of the public liability endorsement. Filing of the affidavit was not timely and the affidavit has not been considered by the court. Aetna, of course, is free to seek reconsideration if it feels such knowledge on the part of American somehow favorably impacts the validity of the public liability endorsement.

mission to use the truck on the night of the accident.

American's antedated public liability endorsement being void due to fraud relieves American of any obligation to defend or indemnify Fairchild or Richards.