JERINA ET AL. *v.* SCHROCK ET AL.;
NORMAN HILLS, INC., APPELLANT;
SPECIAL SERVICES TRANSPORTATION,
INC., APPELLEE.

(No. 1345—Decided October 5, 1987.)

*Joseph T. Svete Co., L.P.A.,* and *David A. McGee,* for appellant.

*Dworken & Bernstein Co., L.P.A.,* and *Andrew P. Buckner,* for appellee.

CHRISTLEY, J. Paul Schrock was the owner of his own tractor and was the subject of a long-term lease with appellee carrier Special Services Transportation, Inc. ("SST"). Under the terms of the lease, Schrock would use his tractor to haul trailer loads exclusively for appellee. The agreement allowed Schrock to enter into single-trip lease agreements with others when he was not hauling for appellee. SST was involved in interstate commerce and subject to ICC regulations.

Prior to the subject accident, Schrock made a delivery to New Jersey for SST. Upon completing the delivery for SST, he sought and secured a load for the return trip to Ohio. It is the manner in which this transport was secured that is the subject of this appeal.

The proposed trip lessee for the return trip was appellant, Norman Hills, Inc. ("Norman Hills"), which wired Schrock money to cover the expenses of the trip. A written trip-lease form was executed by Norman Hills and sent by ordinary mail to SST, prior to the return trip. It was refused upon receipt by SST; a copy of it had not been carried aboard the truck during the trip in question. Also, at all times during this trip, the tractor and trailer displayed the ICC and PUCO permits and placards of SST and not Norman Hills.

It was on this return trip that Schrock, by his own negligence, was involved in a collision with another vehicle in which the other driver was injured and the passenger killed. Claims were brought against SST, Schrock and Norman Hills. All claims were settled by SST and Norman Hills jointly for $94,270. SST's and Norman Hills' insurance carriers and real parties in interest each paid an equal share of the amount.

Cross-claims between SST and Norman Hills were filed. The trial court found against Norman Hills, ruling that "the trip lease between SST and Norman Hills did not conform to the requirements of the Interstate Commerce Commission and is unenforceable." Therefore, the court held that at the time of the mishap, a common-law employee-employer relationship existed between Schrock and Norman Hills resulting in Norman Hills' liability. A timely appeal was

thereafter filed with the following single assignment of error:

"The trial court erred to the prejudice of appellant/Norman Hills, Inc. in granting appellee/SST judgment upon its cross-claim against appellant/Norman Hills, Inc., and in denying appellant/Norman Hills, Inc.'s cross-claim against appellee/SST, thereby holding appellant/Norman Hills, Inc.'s insurance carrier, and real party in interest, liable for the whole of the joint settlement without liability and/or contribution on appellee/SST's insurance carrier's part."

Norman Hills' assignment of error has merit.

Norman Hills' primary argument is that SST's legal responsibility for the driver's negligence is fixed as a matter of law by ICC regulations.

The majority of authorities concerning such cases involving the liability of carrier-lessees holds that when a carrier-lessee such as SST permits a lessor-driver to use its authority without a release and compliance with other ICC regulations, it is responsible for injuries caused by the lessor-driver, even if the lessor-driver was embarked on an undertaking of his own while using the carrier-lessee's authority. *Rodriguez* v. *Ager* (C.A. 10, 1983), 705 F. 2d 1229; *Carolina Cas. Ins. Co.* v. *Insurance Co. of North America* (C.A. 3, 1979), 595 F. 2d 128; *Wellman* v. *Liberty Mut. Ins. Co.* (C.A. 8, 1974), 496 F. 2d 131; *Kreider Truck Service, Inc.* v. *Augustine* (1979), 76 Ill. 2d 535, 394 N.E. 2d 1179; *Cox* v. *Bond Transp., Inc.* (1969), 53 N.J. 186, 249 A. 2d 579; *Rediehs Express, Inc.* v. *Maple* (Ind. App. 1986), 491 N.E. 2d 1006.

Thus, under ICC regulations, an ICC carrier's liability for the equipment and drivers covered by a leasing agreement is not governed by traditional common-law doctrines of master-servant and *respondeat superior* and the independent contractor concept. *Rodriguez* and *Cox, supra;* see, also, *Kreider, supra,* and Section 11107, Title 49, U.S. Code; Part 1057, Title 49, C.F.R.

The statutory goal is to protect the motoring public. *Aetna Cas. & Sur. Co.* v. *Fairchild* (D. Idaho 1985), 620 F. Supp. 1245, 1253.

Under Section 11107, Title 49, U.S. Code, Congress authorized the ICC and Secretary of Transportation to regulate the leasing of motor vehicles by motor carriers. The ICC then adopted regulations governing the leasing by carriers of owner-lessor equipment for use by the carriers with operating authority for the interstate transportation of goods. *Rediehs, supra.*

"The ICC regulation * * * makes the carrier responsible for the lessor's conduct, which includes financial ability, insurance coverage, safety of equipment, and competence of drivers." *Id.* at 1012.

Where the leased vehicle is involved in an accident during the terms of the lease while carrying on the decal the name and the ICC number of the carrier with operating authorities, and while carrying a copy of the lease in the equipment with no release having been executed for the termination of the lease, the carrier is liable as a matter of law even though the owner-driver lessor was involved in a project of his own without the knowledge and consent of the carrier-lessee. *Rediehs* and *Wellman, supra; Kreider* and *Cox, supra.*

The rationale expressed in these cases and argued by appellant in the instant case is that the lessee, SST, by entering into the lease arrangement with the owner-lessor and placing its identification upon the vehicle, has vested the owner-lessor with authority he does not otherwise possess to transport commodities in interstate

commerce; such authority continues for the duration of the lease and *until the identification is removed and possession is surrendered in the manner provided by the ICC regulations. Rediehs, Rodriguez, Kreider,* and *Cox, supra.*

It is uncontradicted that the tractor-trailer in the present case at the time of the collision displayed the ICC/PUCO permits, placards, and identification of SST, and not Norman Hills. Furthermore, no relinquishment, receipt, and surrender of the ICC permits registered to SST was ever made pursuant to the requirements of Part 1057, Title 49, C.F.R. Therefore, under the law, there existed an irrebuttable presumption of an employment relationship between the owner-lessor and the lessee, SST, whose placards identified the vehicle. *Carolina Cas. Ins. Co., supra,* at 137, fn. 29. Carrier-lessee SST, in the present situation, must be presumed to be the statutory employer of Schrock, the owner-lessor.

SST argued in the trial court that since it never signed the trip lease executed by Norman Hills, and since a copy of that trip lease was not carried on board by the driver when the accident occurred, the lease between SST and Norman Hills, Inc. did not conform to the requirements set by the ICC and was unenforceable.

The lower court agreed and then erroneously determined the matter based on the common-law employee-employer relationship between the driver and Norman Hills. The court should have determined that if a valid trip lease had not been created, then liability must be determined as a matter of federal law in accordance with the discussion above. The law did not leave room for the court to determine liability based solely upon a common-law employer-employee relationship.

The lower court and SST also incorrectly relied on an Arizona Court of Appeals case to support the finding of appellant's liability. *Wilson* v. *Riley Whittle, Inc.* (1985), 145 Ariz. 317, 701 P. 2d 575. The *Wilson* case is distinguishable from the present action. In *Wilson,* there were only two parties involved — the independent truck driver-lessor and the carrier-lessee. The Arizona Court of Appeals, in keeping with the intent of the federal statutes, correctly found that the carrier-lessee should be held financially responsible for the actions of the truck driver with whom it had contracted despite the absence of a valid trip lease.

In the instant case, however, there are three parties and two leases involved: one valid (SST's) and one invalid (Norman Hills'). Had SST's lease been invalid also, the *Wilson* ruling could be applied as appellee argues. However, according to the given facts of this case, SST had a valid lease and was, as a matter of law, at all times in control and responsible for the actions of the driver since no formal relinquishment of control had ever been given as required by the ICC regulations.

Therefore, appellant is entitled to judgment as a matter of law. The judgment of the trial court is reversed and final judgment is entered for the appellant.

*Judgment accordingly.*

FORD, P.J., and COOK, J., concur.