Jeanette **GILSTORFF**, Plaintiff,

v.

**TOP LINE EXPRESS, INC., et al., Defendants.**

**No. 3:94 CV 7327.**

United States District Court, N.D. Ohio, Western Division.

Dec. 21, 1995.

John D. Willey, Jr., Richard E. Antonini, Eastman & Smith, Toledo, OH, for Top Line Express, Inc. and Vanliner Ins. Co.

Michael L. Inscore, Inscore, Rinehardt, Whitney & Enderle, Mansfield, OH, for Kenneth S. Hickman.

John D. Willey, Jr., Richard E. Antonini, Eastman & Smith, Toledo, OH, David W. Stuckey, Robison, Curphey & O'Connell, Toledo, OH, for Ralph M. Smith.

Thomas C. Brown, Donald E. Worthing, Brown, Bartunek & Worthing, Cleveland, OH, Susan D. Brown, Office Of The Attorney

General, Columbus, OH, for MTC Freight Systems, Inc.

Gary L. Nicholson, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Pacific Employers Insurance Company.

Scott J. Saum, Sol Zyndorf, Zyndorf & Saum, Toledo, OH, for Kelli Lynn Coleman.

Alan R. McKean, Oak Harbor, OH, for Kathryn Z. Gotwald.

Martin D. Carrigan, Fuller & Henry, Toledo, OH, Alan R. McKean, McKean & McKean, Oak Harbor, OH, for Jeanette Gilstorff.

## MEMORANDUM OPINION

KATZ, District Judge.

This diversity action is before the Court on cross-motions for summary judgment. The various defendants in this case have asked this Court to determine the amounts of their relative liabilities to Plaintiff and to each other. For the following reasons, the Court finds that Defendant Top Line Express, Inc. ("Top Line") is primarily liable to Plaintiff; Top Line's primary insurance coverage is that provided by Third–Party Plaintiff Vanliner Insurance Company ("Vanliner"); and Vanliner has no right of indemnity or contribution against any other defendant.

## BACKGROUND

The motions now at issue arise out of an action for personal injuries brought by Plaintiff Jeanette Gilstorff against Defendants Top Line, Kenneth S. Hickman, and Ralph M. Smith. The material facts are not in dispute.

On July 14, 1993, Gilstorff was a passenger in an automobile driven by the late Corinne M. Vance. Vance's automobile was involved in an accident with a semi tractor-trailer driven by Defendant Hickman and owned by Defendant Smith. Vance was killed in the accident, and her two passengers, Gilstorff and Kathryn Z. Gotwald, were seriously injured.

The tractor-trailer was permanently leased to Top Line, an ICC carrier. Hickman generally drove a route for Top Line from Mansfield, Ohio to Flint, Michigan three times a week. If Top Line did not have a return load, the lease agreement authorized Hickman to "trip lease" a load from another carrier for the return trip. At the time of the accident, Hickman was returning from Detroit, Michigan with a trip-leased load for Defendant MTC Freight Systems, Inc. ("MTC").

The agreement made between Hickman/Smith[1] and MTC provides that the truck is "in the exclusive possession, control and use of" MTC, that MTC "assumes full responsibility in respect to the equipment it is operating to the public." MTC also agreed to "properly and correctly identify with signs the leased equipment in accordance with [ICC requirements]." The trip lease also contains, however, "a clause requiring the lessor to maintain liability insurance on the vehicle and an indemnification clause requiring the lessor of the vehicle to "reimburse and otherwise indemnify [MTC] for any and all losses sustained by [MTC] resulting from the use of the aforesaid equipment."

Although the trip lease specified that the tractor-trailer would display MTC placards, Hickman left Top Line's placard and ICC number displayed on the truck.

Gilstorff brought suit against Top Line, Hickman, and Smith, for injuries she suffered in the accident. Vanliner, Top Line's insurer, intervened in the case. Top Line and Vanliner filed a third-party complaint against MTC and its insurer, Pacific Employers Insurance Company ("Pacific"), praying for indemnity and contribution should they be found liable to Gilstorff. They also cross-claimed against Hickman and Smith for indemnity and contribution. MTC and Pacific then counterclaimed against Top Line and Vanliner, and crossclaimed against Hickman and Smith, for indemnity and contribution.

The defendants subsequently settled with Gilstorff and the other injured passengers. Each insurance company paid half the settlement amount, pending a determination by this Court of the various defendants' liabilities, and the extent and priority of insurance coverage for each defendant. Now the de-

---

1. The contract was made and signed by Hickman as agent for Smith.

fendants have submitted the questions of relative liability and insurance coverage on cross-motions for summary judgment.

Defendants Top Line and Vanliner argue that Defendant MTC is liable for the accident, because MTC had exclusive possession, control and use of the tractor-trailer, MTC contracted to maintain liability insurance on the vehicle, and MTC agreed to display its ICC placards on the vehicle. Top Line and Vanliner argue further that Defendant Pacific provides the primary insurance coverage for MTC under the terms of its insurance agreement with MTC.

Defendants MTC and Pacific argue that Defendant Top Line is liable, because the trip lease agreement contains an indemnification clause, and because Top Line's placards were actually displayed on the tractor-trailer at the time of the accident. MTC and Pacific argue further that Third–Party Plaintiff Vanliner provides the primary insurance coverage for Top Line under the terms of its insurance agreement with Top Line.

### DISCUSSION

#### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

#### B. Primary and Vicarious Liability

Assuming for purposes of these motions that a jury would have found liability to Plaintiff, primary liability belongs to Hickman, the driver of the tractor-trailer. It is axiomatic in tort law that the tortfeasor himself is primarily liable for damages arising out of a tort. Since Plaintiff has not claimed any other basis for liability on the part of the other defendants, the liability of all other parties to the action is vicarious.

Vicarious liability arises because of a relationship between the tortfeasor and the person to whom his tortious conduct is imputed. There are several possible bases of vicarious liability among the other parties in this case: employer/employee; carrier/independent contractor; and insurer/insured.

#### 1. Top Line Express, Inc.

 Defendant Top Line is vicariously liable for the tortious acts of Hickman. Federal law makes a carrier liable for the acts of any driver who displays its ICC placard and identification numbers while a lease is in effect, regardless of whether the driver is the lessee's employee, and even if the driver embarks on an undertaking of his own.

*Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.,* 58 Ohio St.3d 261, 264–65, 569 N.E.2d 1049, 1052–53 (1991); *Jerina v. Schrock,* 37 Ohio App.3d 171, 172, 525 N.E.2d 524, 525 (1987). It is undisputed that the tractor-trailer displayed Top Line's placard and identification numbers. As to the existence of a lease agreement, the Court finds that the permanent lease to Top Line remained in effect for the duration of the trip lease. Ohio courts have held that a carrier-lessee who puts the trip in motion cannot avoid responsibility for the return trip. *E.g., Canal Ins. Co. v. Brogan,* 93 Ohio App.3d 765, 772–73, 639 N.E.2d 1219, 1223–24 (1994). *See also Ohio Casualty Ins. Co. v. United S. Assurance Co.,* 85 Ohio App.3d 529, 620 N.E.2d 163 (1993); *American Transit Lines v. Smith,* 246 F.2d 86, 90–91 (6th Cir.1957). Top Line's liability is, therefore, fixed as a matter of law.

### 2. MTC Freight Systems, Inc.

■ MTC is vicariously liable for the tortious acts of Hickman. A carrier that uses motor vehicles not owned by it to transport property is responsible to obtain liability insurance on the motor vehicles, and to ensure that the vehicles are operated in compliance with all applicable law as if the carrier owned the motor vehicles. 49 U.S.C.A. § 11107(a)(3) & (4) (West Supp.1995). Furthermore, the lease signed by MTC places upon MTC full responsibility with respect to the tractor-trailer. MTC's liability is fixed, both by federal statute and as a matter of contract law.

### 3. Vanliner Insurance Company

■ Vanliner is vicariously liable as Top Line's insurer. The insurance policy contains a "trucker's endorsement" that provides primary coverage for any person "from whom you hire or borrow a covered 'auto' ... while the covered 'auto' (1) is being used *exclusively in your business as a* 'trucker;' and (2) is being used pursuant to operating rights granted to you by a public authority." The tractor-trailer was leased to Top Line for use in its business, and was being driven under Top Line's placard and authority.

■ Vanliner urges the Court to hold that the tractor-trailer is not covered under the policy because the vehicle was not being used *exclusively* in Top Line's business for the duration of the trip lease. In evaluating this argument, the Court is guided by the principle that insurance contracts are construed against the drafter, and in favor of coverage. In this case, if Hickman had driven from Mansfield to Flint, and then immediately driven back with an empty truck because there was no load for the return trip, there would be no question that the truck was being used in Top Line's business: it is in the nature of trucking that a vehicle must be driven over roads to be returned to its home base. The fact that Hickman picked up a non-Top Line load on his way back, with Top Line's permission, scarcely amounts to a detour from Top Line's assignment. It certainly is inadequate to void otherwise valid insurance coverage.

■ Vanliner argues further that Hickman is excluded from coverage under an policy exclusion for "any 'trucker,' or his or her agents or employees, *other than you and your employees:* (1) if the 'trucker' is subject to motor carrier insurance requirements and meets them by a means other than 'auto' liability insurance" (emphasis added). Vanliner correctly points out that Hickman's contract with MTC provided that the motor carrier insurance requirements would be met by MTC's insurance coverage. Before this exclusion can apply, however, the Court must find that Hickman was not Top Line's employee, since the exclusion by definition applies only to non-employees. Again, the Court must construe the insurance contract in favor of coverage. In construing insurance contract terms, the Court uses the customary meaning attached to such terms in the lay community, rather than the technical, legal definition of these terms. The dictionary definition of "employee" is "one employed by another," and the definition of "employment" includes "temporary or occasional work or service for pay." Webster's Third New International Dictionary 743 (Philip Gove, ed., 1966). While it is uncertain from the record whether Hickman is technically an employee or an independent contractor of Top Line, it is clear that he worked

almost exclusively for Top Line. The Court finds that Hickman was Top Line's employee for the purpose of this contract provision, and the exclusion does not apply.

Hickman is, therefore, an insured under the liability policy issued by Vanliner to Top Line. Vanliner is responsible for the damages caused by Hickman's tortious acts.

### 4. Pacific Employers Insurance Company

Pacific is vicariously liable as MTC's insurer for Hickman's tortious acts. The policy issued by Pacific to MTC contains language identical to that in the policy issued by Vanliner to Top Line. Like Vanliner, Pacific argues (1) that the tractor-trailer was not being used exclusively in MTC's business as a trucker, and (2) that the trucker was subject to motor carrier insurance requirements and met them by a means other than "auto" liability insurance.

■ Pacific's first argument is without merit. MTC agreed by contract that the tractor-trailer was to be in MTC's exclusive possession, control, and use. MTC is estopped from arguing that the tractor-trailer was not in its exclusive possession, control, and use; and Pacific, which stands in MTC's shoes, is likewise estopped from making this argument. The truck was being used in MTC's business as a trucker.

■ Pacific's second argument is likewise without merit. Although the lessor may assume by contract the *ultimate* responsibility for damages caused by its employee's negligence, *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.,* 423 U.S. 28, 40, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975), the lessee of a motor vehicle cannot use such an indemnity agreement to avoid its own responsibility to obtain liability insurance on the vehicle. Federal law places that responsibility squarely on the shoulders of the lessee. 49 U.S.C.A. § 11107(a)(3) (West Supp. 1995). The tractor-trailer is not excluded from coverage under the MTC policy.

Hickman is, therefore, an insured under the liability policy issued by Pacific to MTC. Pacific is responsible for the damages caused by Hickman's tortious acts.

### C. Priority of Liability Among the Parties

Thus far, the Court has addressed only the issue of which Defendants would be vicariously liable to Plaintiff in a lawsuit brought by her against them. The issue of the parties' relative liability *vis a vis* each other is a separate question. The holding that Top Line, Vanliner, MTC, and Pacific all are vicariously liable to Plaintiff is only the first step in the Court's analysis. The questions now become which of the parties is made primarily liable under the applicable statute, and whether the parties have successfully altered the statutory default by contract.

### 1. The Federal Regulatory Scheme

In 1978, Congress amended the Interstate Commerce Act to allow the Interstate Commerce Commission ("ICC") to prescribe regulations to insure that motor carriers would be fully responsible for the operation of vehicles used by them. This amendment was codified at 49 U.S.C. § 11107. The ICC then adopted regulations requiring that the authorized carrier "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c).

■ The purpose of the law is to protect the motoring public. Victims of accidents involving leased motor vehicles used in the interstate transportation of property need not engage in complex, multi-party litigation in order to obtain recovery for harm suffered, but can rely on the presence of an ICC placard, coupled with a lease, to fix liability on the lessee whose placard is displayed. *Wyckoff,* 58 Ohio St.3d at 265–66, 569 N.E.2d at 1053; *Jerina,* 37 Ohio App.3d at 172, 525 N.E.2d at 525. Once liability is fixed on the lessee, the lessee can seek indemnification from other potentially responsible parties. *Wyckoff,* 58 Ohio St.3d at 266, 569 N.E.2d at 1053; *Balez–Pierce v. Price & Boyce, Inc.,* 86 Ohio App.3d 119, 122, 619 N.E.2d 1194, 1196 (1993); *Lime City Mut. Ins. Ass'n v. Mullins,* 83 Ohio App.3d 517, 615 N.E.2d 305 (1992); *Teledyne Osco Steel v. Woods,* 39 Ohio App.3d 145, 147, 529 N.E.2d 1271, 1274 (1987).

### 2. Primary Liability

 The first issue is which of two lessees is primarily liable under the statute, when the lease specifies that the trip lessee's ICC placard is to be displayed on the truck, but the permanent lessee's placard is actually displayed.

MTC argues that Top Line is primarily liable. Ohio courts have held that the ICC regulations create an *irrebuttable presumption* that a lessee whose placard is displayed is liable for all harm caused while the lease is in effect. *Wyckoff*, 58 Ohio St.3d at 265–66, 569 N.E.2d at 1053; *Jerina*, 37 Ohio App.3d at 172, 525 N.E.2d at 525. MTC points out that the tractor-trailer was leased to Top Line under the permanent lease arrangement, and that Top Line's ICC placard was in reality displayed on the truck. This combination, argues MTC, satisfies the statutory requirement.

Top Line counters that statutory liability would clearly have been fixed on MTC had the trip lease been strictly adhered to by Hickman. The trip lease gives MTC exclusive possession of the truck for the duration of the trip. MTC's placard should have been the one displayed. Further, argues Top Line, the trip lease to MTC operated to suspend the lease with Top Line, since Federal law provides that only one carrier have exclusive possession at a time.

The Court finds that MTC has the better argument. Ohio courts have consistently found the actual display of the placard on the truck to be dispositive. In a suit by an innocent victim against Top Line, Top Line would be found to be primarily liable.

### 3. Contractual Allocation of Liability: The ICC Placard

 But our analysis does not end here. The next question is whether, in a suit between the lessees, the contractual obligation undertaken by MTC operates to transfer liability from Top Line to MTC in such manner as to give Top Line a right of contribution or indemnification against MTC. The parties do not dispute that, had MTC's placard been displayed, as required by the trip lease, MTC would be primarily responsible to third parties for damage caused by the tractor-trailer.

While the placard displayed is dispositive as to third parties, the contract is what assigns liability between MTC and Top Line. Were the Court to hold otherwise, whole portions of the parties' contract would be rendered nugatory. The clause requiring MTC to display its placard on the leased vehicle evinces an intent on the part of MTC to be primarily liable in the event of an accident, and gives Top Line an indemnity claim against MTC.

### 4. Contractual Allocation of Liability: The Indemnification Clause

 The next issue, then, is whether the indemnification clause in the agreement between Smith and MTC operates either to transfer primary liability back from MTC to Top Line, or to give MTC a right of indemnification against Smith. The indemnification clause provides:

"It is agreed that the Lessor will carry acceptable Public Liability and Property Damage Insurance and the Lessor further agrees to furnish the Lessee with proof of such insurance upon request. Lessor agrees to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment."

An indemnification clause of this sort does no violence to the "control and responsibility" requirement of 49 U.S.C. § 11107 and is not unenforceable as a matter of public policy. *Brada Miller*, 423 U.S. at 41, 96 S.Ct. at 236. The Court, therefore, construes this clause as a matter of ordinary contract law.

Before the Court can find that the contract clause operates to provide MTC a right of indemnification against Top Line, the Court must find that the contract intends to give MTC indemnity rights against Top Line, and that the contract is enforceable against Top Line. Specifically, the Court must find (1) that the "Lessor" of the tractor-trailer is Top Line, and (2) that Top Line, through its agent, agreed to the contract and the terms therein.

The Court finds that Top Line is the "Lessor" of the vehicle. Although Smith is the owner of the tractor-trailer, the vehicle is permanently leased to Top Line. Smith has no rights to possess, use, or sublease the vehicle in the absence of Top Line's permission. Since Top Line has the exclusive right to possess and use the vehicle, it must be the lessor.

The Court finds also that Top Line impliedly agreed to the terms of the trip lease contract. The permanent lease between Smith and Top Line authorizes Smith to trip lease to other authorized carriers with Top Line's permission. The parties do not dispute that Top Line's dispatcher verbally authorized Hickman to enter into the trip lease at bar. With the permission to enter into a trip lease necessarily comes the implied authority to conduct the business necessary to effectuate the trip lease. For purposes of entering into the trip lease, Hickman acted as Top Line's agent. His signature binds Top Line.

██ ██ The fact that the permanent lease between Smith and Top Line expressly prohibits Smith from acting as Top Line's agent does not change this result. First, even viewing the terms in a light most favorable to Top Line, we have two conflicting contract terms: a general prohibition on acting as an agent; and a specific grant of permission that necessarily implies the independent contractor will act as an agent. Specific contract provisions generally outweigh general terms. Second, the prior course of dealings between the parties indicates that Hickman regularly engaged in trip lease contracting of this sort, with the approval of Top Line. Finally, Hickman had apparent authority to enter into a contract with MTC on Top Line's behalf.

The Court finds, therefore, that Top Line contractually agreed to indemnify MTC for any liability incurred over the duration of the trip lease. The ultimate liability for the accident rests on Top Line.

### D. Insurance Coverage

Vanliner and Pacific are in disagreement about which insurer provides primary cover-age for damages arising from the accident. Each policy provides that it is "primary for any covered 'auto' while hired or borrowed by [the policyholder] and used exclusively in [the policyholder's] business as a 'trucker' and pursuant to operating rights granted to [the policyholder] by a public authority." Since the accident arose out of the trucking operations of both Top Line and MTC, the Court holds that Vanliner provides primary coverage for liability incurred by Top Line, and Pacific provides primary coverage for liability incurred by MTC. Since Top Line is ultimately liable to Plaintiff, Vanliner provides the primary insurance coverage.

The parties have represented that the total amount of the settlement for all three accident victims was $765,000, half of which was paid by each insurer. This amount is less than Vanliner's policy limit of $1,000,000. Vanliner, therefore, is responsible to pay the entire settlement amount.

### CONCLUSION

Vanliner Insurance Company is liable for the entire settlement amount of $765,000. Vanliner does not have a right of indemnification or contribution against Smith and/or Hickman because Hickman was an insured under the policy issued by Vanliner to Top Line. Vanliner does not have a right of indemnification or contribution against MTC or Pacific because their liability is secondary to Vanliner's. Vanliner is directed to pay $382,500 to Pacific Employers Insurance Company in settlement of Pacific's right of indemnity against Vanliner. Each party to bear its own costs.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Third–Party Defendant MTC Freight Systems and Defendant Pacific Employers Insurance Company's Motion for Summary Judgment (Doc. No. 49) is granted in part. Defendant Top Line Express, Inc.'s Motion for Partial Summary Judgment (Doc. No. 52) is denied. Third–Party Plaintiff Vanliner In-

surance Company's Motion for Summary Judgment (Doc. No. 53) is denied.

FURTHER ORDERED that Vanliner Insurance Company shall pay $382,500 to Pacific Employers Insurance Company in settlement of Pacific Employers Insurance Company's right of indemnity against Vanliner Insurance Company.

IT IS SO ORDERED.