**METCO PRODUCTS, INC., DIVISION OF CASE MANUFACTURING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 88–1132.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1989.

Decided Sept. 5, 1989.

the agreement at issue because its agent, Robert Pearlman, did not have authority to bind Metco to any agreement with the Union. Because substantial record evidence supports the NLRB's finding that Pearlman had apparent authority to act on Metco's behalf, we grant enforcement to the NLRB's order.

## I.

Metco manufactures furniture at several facilities located in North Carolina. In October of 1986, the NLRB certified the Union as the collective bargaining representative for production and maintenance workers at Metco's Greensboro plant. When the Union requested Metco to enter into negotiations for a collective bargaining agreement, Metco's President, Paul Saperstein, hired attorney Robert Pearlman to act as the company's labor negotiator. Pearlman prepared the company's initial set of bargaining proposals which Saperstein reviewed and approved. Pearlman was allegedly instructed that if any new proposals were put forward, he would have to seek Saperstein's approval prior to agreeing to such proposals.

Between November of 1986, and June of 1987 Metco and Union representatives met for several bargaining sessions. Pearlman represented Metco at all of the sessions although he was often accompanied by Larry Clark, the Greensboro plant manager. The Union was represented by Delbert Gordon, as chief negotiator, Charles Carroll, the local union President, and Ken Stalley, a local union member. Saperstein did not attend any of the bargaining sessions, but relied upon Pearlman and Clark to inform him of the negotiations' progress. Negotiations stalemated in March of 1987 when the parties could not agree on the issues of dues checkoff, arbitration, procedures for grievance investigation, and the duration of the contract. Union representative Delbert Gordon then requested the assistance of a Federal Mediator. Throughout the spring of 1987, the parties did not meet face to face and instead relied on the Federal Mediator, Leonard Duggins, as a go-between.

Charles Preyer Roberts III (Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, P.A. on brief), for petitioner.

Paul George Hitterman (Rosemary M. Collyer, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Peter Winkler, Supervisory Atty., N.L.R.B. on brief), for respondent.

Before ERVIN, Chief Judge, and PHILLIPS and SPROUSE, Circuit Judges.

ERVIN, Chief Judge:

Metco Products, Inc., ("Metco"), appeals from a decision and order of the National Labor Relations Board ("NLRB") holding that Metco had engaged in an unfair labor practice and ordering Metco to execute an agreement reached between its collective bargaining agent and the Communications Workers of America, AFL–CIO ("the Union"). Metco argues that it is not bound by

In June, the Union requested Duggins to inform Metco that it was willing to make substantial concessions in order to reach an agreement. Pearlman and the three Union representatives then met for a final session on June 4, 1987. According to testimony from Gordon and Carroll, the parties reached agreement on all remaining issues at this meeting. Gordon agreed to have the agreement typed in final form for signatures and, a few days later, mailed copies of the contract to Pearlman and plant manager Clark. On June 22, Gordon called Pearlman to say that the Union was ready to meet and sign the contract. Pearlman, however, declined to set a time for signing the contract on the grounds that Saperstein still had to review and approve the agreement. Metco subsequently refused to execute the agreement.

The Union then filed unfair labor practice charges with the NLRB. A hearing was held before Administrative Law Judge Phillip McLeod on December 19, 1987. In these proceedings Metco did not dispute the contention that Pearlman and the Union representatives reached an agreement at the June 4th meeting. Instead, Metco claimed that it was not bound by the June 4th agreement because Pearlman was never granted authority to agree to Union proposals without Saperstein's prior approval. Metco supported this claim by attempting to prove that the Union negotiators were aware of limitations on Pearlman's authority. Carroll, Gordon, Saperstein and Clark each testified at the hearing. Their testimony revealed that Pearlman represented himself as the head of Metco's bargaining committee and did most of the talking for Metco during the negotiations. The testimony was in conflict, however, as to whether or not Pearlman ever stated that he needed Saperstein's approval before agreeing to Union proposals. Curiously, neither Pearlman nor J.D. Parrish, a Metco manager who attended the first bargaining session, testified.

ALJ McLeod, in a Decision issued on February 29, 1988, found that Metco had never communicated to the Union what, if any, limitations it had imposed upon Pearlman's authority. Relying on NLRB precedent holding that labor negotiators are deemed to have apparent authority to enter binding agreements in the absence of clear notice to the contrary, ALJ McLeod concluded that Pearlman had apparent authority to enter into an agreement on Metco's behalf. The ALJ also noted:

> Saperstein's testimony concerning his reasons for not signing the collective-bargaining agreement is itself somewhat suspect. Saperstein claims Pearlman exceeded his authority by agreeing to allow the Union 10 minutes to investigate grievances and by agreeing to a 3–year contract. Saperstein makes this claim even though he admittedly approved a 3–year wage proposal at an earlier meeting and even though Saperstein admits he did not require Pearlman to seek his approval on non-economic issues such as the grievance investigation proposal.

(Record on Appeal p. 113–114). The ALJ ordered Metco to sign and execute the agreement and to give retroactive effect to the agreement's wage provisions. The NLRB adopted the ALJ's decision on June 14, 1988. *Metco Products and Communications Workers of America*, 289 NLRB ——— (No. 15), 130 LRRM (BNA) 1351 (1988).

## II.

Collectively, sections 8(a)(1), 8(a)(5), and 8(d) of the National Labor Relations Act ("the NLRA"), 29 U.S.C. §§ 158(a)(1), 158(a)(5), 158(d), require employers and employees to bargain in good faith and to reduce the substance of any agreement to writing if either party so desires. "A *per se* violation of § 8(a)(5) may occur when a company misleads the union into believing that an agreement has been reached ... and only formal execution remains, or when an employer has reached a complete agreement with the union and its refusal to sign frustrates the whole concept of collective bargaining." *N.L.R.B. v. Advanced Business Forms Corp.*, 474 F.2d 457, 465 (2nd Cir.1973) (citations omitted). *See also Procter & Gamble v. N.L.R.B.*, 658 F.2d 968, 982 (4th Cir.1981). This case thus requires us to determine whether Pearl-

man, acting as Metco's labor negotiator, bound Metco when he agreed to the Union's compromise proposals at the June 4th meeting.

 Generally, the existence and scope of agency relationships are factual matters. *N.L.R.B. v. Donkin's Inn*, 532 F.2d 138, 141 (9th Cir.1976), *Local 1814, Int. Longshoremen's Ass'n v. N.L.R.B.*, 735 F.2d 1384, 1394 (DC Cir.1984). And factual determinations made by the NLRB will not be disturbed on appeal if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), *McLean Trucking Co. v. N.L.R.B.*, 719 F.2d 1226, 1227 (4th Cir. 1983).

As noted above, the ALJ found that Pearlman had apparent, rather than express, authority to enter into an agreement on Metco's behalf. The Restatement (Second) of Agency defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other." Restatement (Second) of Agency § 8 (1958). Thus if Pearlman did possess apparent authority to enter into an agreement on behalf of Metco, Metco is legally bound by Pearlman's actions, and Metco's subsequent refusal to execute the June 4th agreement violates Sections 8(a)(1), 8(a)(5), and 8(d) of the Act.

 "Whether an agency relationship exists under the [NLRA] is to be determined under the general common law of agency." *N.L.R.B. v. Georgetown Dress Co.*, 537 F.2d 1239, 1244 (4th Cir.1976).[1]

The law governing the creation of apparent authority is well established. According to the Restatement:

> apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Restatement (Second) of Agency § 27 (1958). In other words, an agent is imbued with apparent authority to bind his or her principal if a third person could reasonably interpret acts or omissions of the principal as indicating that the agent has authority to act on behalf of the principal.

 In the context of collective bargaining, the NLRB has adopted a clear and simple rule regarding the creation of apparent authority on the part of a labor negotiator. The NLRB has long held that "when an agent is appointed to negotiate a collective-bargaining agreement that agent is deemed to have apparent authority to bind his principal in the absence of clear notice to the contrary." *University of Bridgeport*, 229 NLRB 1074, 95 LRRM 1389, 1390 (1977). *See also Aptos Seascape Corporation*, 194 NLRB 540, 79 LRRM 1110 (1971), *Medical Towers Limited*, 289 NLRB —— (No. 123) 129 LRRM 1169 (1987), *enf. granted without opinion, Medical Towers Ltd. v. N.L.R.B.*, 862 F.2d 309 (3rd Cir. 1988).[2] The laudable purpose of this rule is to lessen the opportunities for ambiguity and confusion by requiring a party who chooses to negotiate through an agent to

---

**1.** The NLRA provides: "In determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." NLRA § 2(13), 21 U.S.C. § 152(13). This language was intended by Congress to incorporate the general common law of agency into the field of labor law. *Local 1814, Int. Longshoremen's Ass'n v. N.L.R.B.*, 735 F.2d, at 1393–94.

**2.** In many respects, the NLRB's rule is but a particular application of a general principle of the law of apparent authority. As suggested by

the Restatement, "apparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent." Restatement (Second) of Agency § 27, Comment a. The *University of Bridgeport* rule merely recognizes that the power to enter into binding agreements is one of the things ordinarily entrusted to one occupying the position of a labor negotiator.

disclose any limitations on the agent's authority. *See University of Bridgeport,* 95 LRRM, at 1390. Here, Metco does not dispute the fact that neither Sapperstein nor any other company official ever stated to the Union the alleged limitations on Pearlman's authority. Metco's omission thus raises a rebuttable presumption in favor of the reasonableness of the Union's perception that Pearlman had full authority to enter into an agreement on Metco's behalf.

Metco nonetheless argues that the evidence does not support the ALJ's finding that Pearlman had apparent authority. Gordon, Carroll, and Clark each testified that on a few occasions, Pearlman stated that he needed to discuss specific proposals with Saperstein before agreeing to them. Metco contends that this testimony reveals that the Union negotiators were aware of the fact that Saperstein's approval was required for all new proposals. It is certainly true that apparent authority does not arise in circumstances where third parties are actually aware of limitations on the agent's authority, *see, e.g., Southwest Sunsites v. F.T.C.,* 785 F.2d 1431, 1438 (9th Cir.1986), and *Tryco Trucking Co. v. Belk Stores Services,* 634 F.Supp. 1327 (W.D.NC 1986). And such an awareness on the part of the Union's representatives, if proved, would rebut the presumption of apparent authority that arises from Metco's failure to disclose limitations it imposed on Pearlman's authority.

The testimony upon which Metco relies, however, does not compel the conclusion that the Union negotiators were aware of any such limitations. From the testimony regarding Pearlman's actions one could reasonably infer that Pearlman, like any conscientious agent, felt an occasional need to confer with his principal before exercising his authority. Thus the ALJ, as factfinder, was entitled to conclude that the Union representatives were not aware of the undisclosed limits on Pearlman's authority.

### III.

We conclude that the ALJ's finding that Pearlman had apparent authority to enter into an agreement on Metco's behalf is supported by substantial evidence. Metco's subsequent refusal to execute the agreement reached at the June 4th meeting was therefore an unfair labor practice and accordingly the NLRB's order of June 14, 1988 is hereby

ENFORCED.