851 F.Supp. 1208 (1994)
TAFT EQUIPMENT SALES COMPANY, a Delaware Corporation, Plaintiff,
v.
ACE TRANSPORTATION, INC., a Louisiana Corporation, Defendant,
ACE TRANSPORTATION, INC., a Louisiana Corporation, Third-Party Plaintiff,
v.
TRUCKERS EXPRESS, INC., Third-Party Defendant,
TRUCKERS EXPRESS, INC., Fourth-Party Plaintiff,
v.
AERO TRUCKING, INC., a Delaware Corporation, Fourth-Party Defendant,
AERO TRUCKING, INC., a Delaware Corporation, Fifth-Party Plaintiff,
v.
Gary ESTEP, d/b/a a motor truck common carrier, and Danny Estep, Fifth-Party Defendant.
No. 91 C 1759.
United States District Court, N.D. Illinois, Eastern Division.
March 28, 1994.
*1209 *1210 John Francis Horvath, Duane Charles Weaver, Horvath & Lieber, Chicago, IL, for Taft Equipment Sales Co.
Stephen C. Veltman, Edward B. Ruff, III, Pretzel & Stouffer, Chtd., Chicago, IL, for Ace Transp. Inc.
John Michael Hynes, Sonia Victoria Odarczenko, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, Edward G. Sullivan, Paul W. Burke, Drew, Eckl & Farnham, Atlanta, GA, for Truckers Exp. Inc.
Byron Doyle Knight, Elizabeth A. Knight, Joette S. Doran, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for Aero Trucking Inc.

MEMORANDUM OPINION AND ORDER
NORDBERG, District Judge.
This is an action arising out of incidents resulting in damage to goods being shipped by Taft Equipment Sales Company ("Taft"), the original Plaintiff. Several trucking or transportation companies have become parties to this action as those involved have tried to sort out the liability for the damaged goods. Currently before the Court is the Motion for Summary Judgment of Aero Trucking, Inc. ("Aero"), the Fourth-Party Defendant. The motion is contested by the Fourth-Party Plaintiff, Truckers Express, Inc. ("TEI"). The motion is granted.

I. BACKGROUND
The original Plaintiff in this action, Taft, sought to transport imported printing press units from Baltimore, Maryland to Columbus, Ohio. To that effect, Taft contracted with the original Defendant, Ace Transportation, Inc. ("Ace"). On January 9, 1989, and January 20, 1989, Ace, or agents acting on Ace's behalf, accepted possession of the printing press units in Baltimore. Anchor International, a custom broker, issued a bill of lading, number 76484, for the transportation of the subject goods.
In two separate incidents, on January 10, 1989, and on January 21, 1989, some of the subject goods were damaged in transit. The instant motion relates to only the January 21, 1989 incident. On that date, some of Taft's printing press units were damaged while being transported on a truck driven by a Mr. Danny Estep in the state of North Carolina. He had received the goods from TEI in Maryland for transport to Columbus, Ohio. The truck was owned by independent owner/operator Gary Estep, Danny Estep's brother and employer. The truck was leased, on a permanent basis, to Aero in two leases, one for the truck's tractor, one for its trailer. At all relevant times in this case, the truck bore Aero's name and Interstate Commerce Commission ("ICC") number. However, there is no evidence that Danny Estep had permission from Aero to carry the subject load. In fact, he had not been issued a release number from Aero.
On March 22, 1991, based on the incidents of January 10 and January 21, Taft sued Ace, and later filed an Amended Complaint adding TEI as a defendant.[1] On May 17, 1991, Ace *1211 answered the Taft complaint by stating that it acted merely as a truck broker for the disputed transaction, not as the carrier of Taft's goods. That same day, Ace filed a Third-Party Complaint against TEI. Similarly, TEI answered, on June 28, 1991, by stating that it too acted merely as a truck broker and not as a carrier with respect to Taft's goods. That same day, TEI filed a Fourth-Party Complaint against Aero. Aero answered on August 29, 1991, claiming that it had no relation to the disputed transaction. It did, however, file a Fifth-Party Complaint against Gary Estep, claiming that if it, Aero, was held liable, it was entitled to indemnification from Gary Estep, the actual carrier.[2]
On January 22, 1993, several of the parties agreed to a stipulated dismissal in which Taft's action against Ace and TEI was dismissed. The case now consists of Ace's action against TEI, TEI's action against Aero, and Aero's action against Gary Estep. Before the Court is Aero's Motion for Summary Judgment on TEI's claim against it. Aero contends that it is entitled to judgment as a matter of law because TEI failed to timely notify it of TEI's claim and because TEI has failed to present a prima facie case.

II. ANALYSIS
Summary judgment is appropriate when:
[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Fed.R.Civ.P. 56(r). A party moving for summary judgment bears the initial burden of informing the district court, and the nonmoving party, of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). This requirement necessitates that the moving party point to those portions of the opposing party's case which it believes indicate the absence of a genuine issue of material fact and which it believes entitles it to judgment as a matter of law. Id. Once the moving party has carried its initial burden of pointing to defects in the nonmoving party's case, the nonmoving party must come forward with evidence sufficient to create an issue of fact or law regarding a challenged material element of its case. See Celotex Corp. v. Catrett, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.
The standard for granting summary judgment "mirrors" the standard for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). That is, summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict. Id. However, where reasonable minds could differ as to what conclusion is dictated by the evidence, summary judgment should be denied. Id. at 250-51, 106 S.Ct. at 2511-12. In determining whether reasonable persons could differ as to the evidence, the Court must consider whether the nonmovant has put forth sufficient evidence to satisfy the substantive evidentiary standard for its case. Id. at 255, 106 S.Ct. at 2513. Here, TEI must prove its case by a preponderance of the evidence.
TEI's claim against Aero is based on a statute commonly called the Carmack Amendment, which is currently codified at 49 U.S.C. § 11707 (1988). Under the Carmack Amendment, carriers may be held liable for damage to property transported by the carriers, without extensive inquiry into how the property was damaged. 49 U.S.C. § 11707(a)(1) (1988).

A. Untimely Notice
Aero contends that it was not properly notified of TEI's claim, correctly noting that TEI never directly contacted either an Aero employee or agent regarding its claim. Aero asserts that under the Carmack Amendment, and under section 2(b) of the Uniform Straight Bill of Lading, it was entitled to notice of TEI's claim within nine months of the delivery of the damaged property. Since TEI did not contact Aero regarding the January *1212 21, 1989 incident until its filing of the Fourth-Party Complaint, more than two and a half years after that incident, Aero contends that TEI's claim is time barred.
TEI contends that it need only show that Aero had actual knowledge of its claim. TEI argues that Aero received actual notice of its claim when Danny Estep contacted a Mr. Robert Cox shortly after the accident. TEI once believed Cox to be an Aero employee but now agrees that Cox was an employee of Transport Adjustment Systems which was under contract with Aero to investigate and settle liability claims. Whether Cox's knowledge is attributable to Aero, the Court need not decide. In the opinion of the Court, actual knowledge of the type had by Cox, even if it were attributable to Aero, is insufficient to satisfy any notice requirement.
TEI contends that under Hopper Paper Co. v. Baltimore & O.R. Co., 178 F.2d 179 (7th Cir.1949), cert. denied, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950), actual notice is all that is required in the Seventh Circuit. This argument fails for several reasons. First, it is unclear why the Seventh's Circuit's interpretation of the Carmack Amendment should govern this case, particularly when the states encompassed in that jurisdiction have no relation to the facts of this case. Given that Hopper Paper has been widely criticized by Courts in other Circuits, TEI must demonstrate to the Court why Hopper Paper should govern; it has not done so. Second, Hopper Paper has been strictly limited, even in this Circuit. See, e.g., Wisconsin Packing Co. v. Indiana Refrigerator Lines, 618 F.2d 441, 448-53 (7th Cir.) (Sprecher, J., dissenting), cert. denied, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); Sentry Ins. Co. v. Transcon Lines, No. 88-C-2071, 1989 WL 76011 (N.D.Ill. July 5, 1989). While the Hopper Paper decision has not been overruled and is still applied by courts in the Northern District of Illinois, it generally is limited to cases where the carrier had actual notice and perhaps some other form of notice which, by itself, was insufficient, and acting on that notice actually investigated the disputed incident. See Wisconsin Packing Co. v. Indiana Refrigerator Lines, 618 F.2d 441 (7th Cir.), cert. denied, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); Bergen Const. Corp. v. Yellow Freight Sys., Inc., NO. 92-C-4769, 1992 WL 350695 (N.D.Ill. Nov. 23, 1992); Marine Office of Am. Corp. v. NYK Lines, 638 F.Supp. 393 (N.D.Ill.1985); see also Intech, Inc. v. Consolidated Freightways, Inc., 836 F.2d 672 (1st Cir.1987) (requiring "full awareness" in order for actual knowledge to be sufficient notice). Where, as here, there is no evidence that the Plaintiff made any attempt to notify the Defendant, and where the Defendant, based on scant knowledge, took no steps to investigate, Cox's actual notice was insufficient notice of TEI's claim. However, despite this conclusion, Aero is not entitled to summary judgment on the notice issue, on this record. Aero has failed to demonstrate that notice was required within a particular time.
The Carmack Amendment, in relevant part, says:
a carrier or freight forwarder may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section....
49 U.S.C. § 11707(e) (1988). This section limits the degree to which a carrier may require notice of a claim within a short period after a disputed transaction. A carrier cannot contractually, or otherwise, require notice of a claim, and thereby establish a time bar, in a period shorter than nine months after the claim accrues. However, section 11707(e) does not require a nine month notification period. The section assumes that any such notification period would be provided by a "rule, contract, or otherwise."
Here, Aero has not provided the Court with evidence of any rule, or contract, or other means by which it limited the time for notice of claims against it. In particular, Aero has not produced either a bill of lading between TEI and itself or TEI and Estep. Aero has made no argument regarding whether it is entitled to benefit from the bill of lading issued by Anchor International. Generally, a bill of lading binds the shipper and all connecting carriers. Southern Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982). In some circumstances, however, a carrier may not be entitled to the *1213 protections provided in a previous carrier's bill of lading. See Maggard Truck Line, Inc. v. Deaton, Inc., 573 F.Supp. 1388 (N.D.Ga. 1983), aff'd in part, 783 F.2d 203 (11th Cir. 1986) (table).[3] Therefore, on this record, Aero has failed to demonstrate the applicability of Section 2(b) of the Uniform Straight Bill of Lading.
Apparently recognizing its failure to demonstrate a contractual limit on TEI's time to file a notice of claim, Aero argues that TEI was required to file a notice of claim within a "reasonable time" and that the notice in this case, the filing of the Fourth-Party Complaint, came too late. This argument also fails.
While it may be that the doctrine of laches would require TEI to file a lawsuit against Aero, or notify Aero, within a "reasonable time", Aero makes no argument in that regard. None of the authority provided by TEI indicates that the Carmack Amendment requires the giving of notice within a "reasonable time" or defines what amount of time is unreasonable.[4] Moreover, even if the giving of notice were required, either by the doctrine of laches, or by the Carmack Amendment, there is insufficient evidence in the record from which the Court could conclude that TEI's notice, or filing of the suit against Aero, was unreasonably late. Evidence describing the industry custom and practice would be relevant to that issue.
In the only case found by the Court having similar facts and discussing similar issues, Maggard Truck Line, Inc. v. Deaton, Inc., 573 F.Supp. 1388 (N.D.Ga.1983), aff'd in part, 783 F.2d 203 (11th Cir.1986) (table), the United States District Court for the Northern District of Georgia rejected a carrier's contention that a plaintiff truck broker's notice of claim was late, despite the fact that the truck broker had not notified the carrier of the broker's claim within nine months, and had not filed suit until two and a half years after the disputed incident. There, as here, the plaintiff failed to produce an applicable bill of lading.
Given the limited argument and factual material relating to determining an applicable bill of lading, if any, and its provisions, the Court concludes that Aero has not made a sufficient showing with respect to any applicable time limitation and TEI's success or failure in complying with that limitation.

B. TEI's Prima Facie Case
Alternatively, Aero contends that TEI has failed to produce evidence sufficient to demonstrate a prima facie case for relief. To establish a prima facie case, a plaintiff must show: (1) that it delivered the goods to the defendant carrier in good condition; (2) that the goods on arrival were either damaged or destroyed; and (3) the amount of damage. See Maggard Truck Line, Inc. v. Deaton, Inc., 573 F.Supp. at 1393 (citing Missouri Pac. R. Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964)). Aero contends that TEI has failed to satisfy the first of these requirements: delivery of the goods. In support of its argument, Aero asserts: (1) TEI has failed to produce a bill of lading, which is necessary *1214 to its case, and (2) TEI has failed to show that Danny Estep, the driver of the goods, had authority to receive the goods for Aero, and therefore Aero can not be said to have received the goods. The first of these arguments must be rejected. However, the second argument justifies summary judgment in Aero's favor.

1. Failure to Produce a Bill of Lading
Aero has failed to provide the Court with authority indicating that the production of a bill of lading is necessary to maintain a cause of action against a carrier. Section 11707 expressly states: "Failure to issue a receipt or bill of lading does not affect the liability of a carrier or a freight forwarder." 49 U.S.C. § 11707(a)(1) (1988); cf. Harrah v. Minnesota Mining & Mfg. Co., 809 F.Supp. 313, 319 (D.N.J.1992) (stating that a plaintiff's lack of possession of a bill of lading does determine the plaintiff's rights under the Carmack Amendment). While a bill of lading may be strong evidence that a carrier has accepted certain goods, it remains to be demonstrated that a bill of lading is a necessary element of a plaintiff's proof. The argument is rejected.

2. Danny Estep's Authority
TEI argues that, with respect to the January 21, 1989, incident, Danny Estep was driving on behalf of Aero and that TEI's delivery of the goods to Danny Estep in that capacity is sufficient to establish a prima facie case. According to TEI, delivery to Danny Estep constitutes delivery to Aero if two conditions are fulfilled: (1) the truck was leased to Aero at the time it was used to transport the goods; and (2) at that time, the truck displayed Aero's name and ICC number. This argument is based on ICC regulations and case law which might be said to create Danny Estep's "statutory employment" with Aero. TEI also argues that Estep had either actual or apparent authority to act for Aero.

a. Statutory Employment
TEI contends that under Wyckoff Trucking, Inc. v. Marsh Bros. Trucking, 58 Ohio St.3d 261, 569 N.E.2d 1049 (1990); Jerina v. Schrock, 37 Ohio App.3d 171, 525 N.E.2d 524 (1987); and Kreider Truck Service, Inc. v. Augustine, 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179 (1979), it necessarily demonstrates Aero's responsibility for Danny Estep's conduct by showing that the truck was leased to Aero and that, at the time of the incident, the truck was bearing Aero identification.[5] The Court disagrees.
In each of the above three cases, the deciding state court held a truck lessee liable for the tort of an independent contractor incurred when the independent contractor used his truck, labelled with the truck lessee's name and ICC number, to transport goods without the lessee's express authorization. Each of those decisions relied on ICC regulations that have been interpreted to make a lessee responsible for all liabilities to the public arising out of the use of the leased equipment, when that equipment bears the lessee's identification.
For example, in Wyckoff Trucking, Inc. v. Marsh Bros. Trucking, 58 Ohio St.3d 261, 569 N.E.2d 1049 (1991), the Supreme Court of Ohio relied on 49 C.F.R. § 1057.12(c)(1) (1984) (currently codified at 49 C.F.R. § 1057.12(c)(1) (1992)). That section stated:
The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
49 C.F.R. § 1057.12(c)(1) (1984). The Wyckoff Court held that this section created an "irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the *1215 I.C.C. identification numbers of the carrier-lessee." Wyckoff Trucking, 569 N.E.2d at 1054.
In Kreider Truck Service, Inc. v. Augustine, 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179 (1979), the Illinois Supreme Court relied on 49 C.F.R. § 1057.4(d)(1) (1978), repealed before the incident in this case, to reach a conclusion similar to that in Wyckoff Trucking. Similarly, in Jerina v. Schrock, 37 Ohio App.3d 171, 525 N.E.2d 524 (1987), the Court of Appeals of Ohio held that:
[U]nder ICC regulations, an ICC carrier's liability for the equipment and drivers covered by a leasing agreement is not governed by traditional common-law doctrines of master-servant and respondeat superior and the independent contractor concept.
525 N.E.2d at 525. The Jerina court relied on the Kreider Truck Service decision, among others, and unspecified regulations under 49 U.S.C. § 11107 (1982).
In addition to the courts deciding Wyckoff Trucking, Kreider Truck Service, and Jerina, several other courts have interpreted section 1057.12(c)(1) to impose on lessees "complete responsibility" for injuries to the public resulting from leased equipment bearing the lessee's name and ICC number. See Halvorsen v. Kosiboski, No. 88-C-10739, 1989 WL 135194 (N.D.Ill. Nov. 2, 1989) (discussing section 1057.12(c)(1)).
In the opinion of the Court, however, the decisions interpreting section 1057.12(c)(1) to impose "complete responsibility" on a lessee do not govern this case. Each of the cases cited by Aero is a personal injury case involving an injury to a member of the public. In those circumstances, there is a clear public policy in insuring that there was a financially viable entity to pay for public injuries. See Halvorsen v. Kosiboski, No. 88-C-10739, 1989 WL 135194, at *2 (noting the policy considerations of section 1057.12(c)(1)).[6] It is reasonable for a member of the public, generally uninformed as to the nature of the trucking industry and the frequency with which trucks are leased to various carriers, to assume that he can seek damages from the company identified on the truck.
In contrast, where, as here, all parties are knowledgeable in the industry and where none is an uninformed member of the public, there is no clear public policy favoring the imposition of "complete responsibility" on the lessee. In fact, neither party has provided the Court with a single case under the Carmack Amendment where section 1057.12(c)(1) is discussed. Where the party seeking to assert "statutory employment, is not a member of the class intended to be protected by 1057.12(c)(1), the Wyckoff Trucking decision and similar decisions should not be extended. See Roseberry v. Balboa Ins. Co., 90 Ohio App.3d 33, 627 N.E.2d 1062 (12th Dist.1993) (refusing to extend Wyckoff Trucking to plaintiff deemed not to be a member of the protected class); Lakes v. Minor, 86 Ohio App.3d 386, 620 N.E.2d 1015 (12th Dist.1993) (same). But cf. Ohio Casualty Ins. Co. v. United S. Assurance Co., 85 Ohio App.3d 529, 620 N.E.2d 163 (2d Dist.1993) (extending Wyckoff Trucking to cover rights and liabilities of disputing insurance companies). The Court thus holds that section 1057.12(c)(1) is not dispositive where private parties, who are knowledgeable of industry custom and practice at the time the disputed transaction occurred, are engaged in a dispute based on the Carmack Amendment; those parties were not the intended "innocent victim" beneficiaries of section 1057.12(c)(1). The Court thus turns to the common law to resolve this motion.

b. Actual Authority
Under Maryland law,[7] TEI bears the burden of proving the existence of an agency relation between Danny Estep and Aero. See Hofherr v. Dart Indus., Inc., 853 F.2d 259 (4th Cir.1988).[8] Generally, the existence and scope of agency relationships are *1216 factual matters. Metco Prods., Inc. v. NLRB, 884 F.2d 156, 159 (4th Cir.1988). Here, TEI contends that Danny Estep had either actual or apparent authority to act for Aero.
Evidence in the record supports the conclusion that Danny Estep acted outside his authority in accepting goods from TEI. (See Mot. for Summ. J. of Fourth Party Def., Ex. H., Dep. of Edward Conto, ¶¶ 6-18.) The evidence is clear that the contractual relationship between Aero and Danny Estep was that of lessee and independent contractor; Danny Estep was not an Aero employee. While Gary Estep contracted to lease Aero his truck on a permanent basis, the truck leases also permitted him to lease his truck, when it was not to be used by Aero, to third parties. In those circumstances, under the leases, Aero disclaimed all responsibility for the truck. (See Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Reply in Supp. of Mot. for Summ. J., Ex. D, Tractor Lease & Truck Lease, ¶ 12.)
The uncontradicted evidence in the record shows that TEI's purported trip lease with Danny Estep was no more than a lease between Gary Estep, as carrier, and a third party. As an independent contractor, Danny Estep, an employee of Gary Estep, did not have the authority to enter into a trip lease for Aero without Aero's express consent. In this regard, Danny Estep apparently did not follow Aero's proper trip leasing procedures in dealing with TEI.[9] Aero denies having been compensated, and denies that it was to be compensated, for carrying the goods; there is no evidence to contradict those positions. And, there is no evidence that Aero directly received notice or documentation regarding the disputed shipment. Each of these facts tends to show that Aero should not be held responsible for Danny Estep's acts. Aero contends, however, that there remain questions of fact regarding Danny Estep's actual and apparent authority.
There is no evidence in the record that Aero actually gave Danny Estep the authority to receive TEI's goods. Aero did not issue a release number. TEI originally contended that it negotiated the Taft shipment with Robert Cox. Cox denies that any such discussions took place. In fact, TEI now admits that Cox was not an employee of Aero at the time of the incident. Cox had no authority to negotiate trip leases for Aero.
TEI has not produced any evidence regarding which carrier it compensated for shipping the Taft goods. Additionally, it has not produced a signed shipping contract or bill of lading. Instead, TEI has produced a TEI trip lease said to represent an agreement between TEI and Aero, a work order naming Danny Estep as the driver and Aero as the carrier for the January 21 shipment, and a "Dispatch Inquiry" with similar information. None of this evidence indicates that Aero gave Danny Estep authority to haul the Taft printing press units. All of the documents were prepared by TEI. TEI has failed to produce evidence describing the basis for the information contained in the documents.[10] In addition, the trip lease is signed only by a TEI employee, Linda Stone, no one signed the trip lease on behalf of Aero. There is no evidence of Aero's responsibility for that trip lease. The documents are insufficient proof of any authorization by Aero of Estep's conduct.
TEI's failure of proof further is made clear by the fact that it has not filed an affidavit *1217 from Danny Estep or a statement from any TEI employee who claims to have spoken directly with an Aero employee regarding the disputed shipment.
In fact, the only direct evidence submitted in support of TEI's actual authority argument are two affidavits of Gary Estep. The first of these affidavits is unsigned. (See Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Statement of Facts in Supp. of its Mot. for Summ. J., G. Estep Aff.) Aero has moved to strike that affidavit and the motion must be granted. The unsigned Estep affidavit cannot be considered.[11] The second Gary Estep affidavit, which is signed, states only: "My brother, Danny Estep, was authorized to drive my truck under the permanent lease to Aero Trucking, Inc. at the time of the subject accident, January 21, 1989."[12] (Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Reply in Supp. of its Mot. for Summ. J., G. Estep Aff. ¶ 5.) This conclusory statement is insufficient support for the conclusion that Danny Estep was authorized to haul the shipment at issue. It does not create a genuine issue of material fact.
*1218 On this record, the Court concludes that there is no genuine issue of material fact as to whether Danny Estep had actual authority from Aero to haul Taft's goods. He did not. TEI's case thus depends on its demonstrating Danny Estep's apparent authority to act for Aero.

c. Apparent Authority
An agent has apparent authority to act for a principal if a third party could reasonably interpret the principal's acts or omissions as indicating that the agent has authority to act on behalf of the principal. Metco Prods., Inc. v. NLRB, 884 F.2d 156, 159 (4th Cir.1989) (interpreting Restatement (Second) of Agency § 27 (1958)); see also Progressive Casualty Ins. v. Ehrhardt, 69 Md.App. 431, 518 A.2d 151, 155-56 (1986) (stating Maryland law on apparent authority).
Here, TEI has produced no evidence of any act on Aero's part indicating that Danny Estep had authority to act for it. While TEI has produced some evidence indicating that it thought Danny Estep was Aero's agent, it has produced no evidence that this assumption was reasonable. Moreover, apparent authority is demonstrated by the acts or omissions of the principal, not the acts or omissions of the agent. See Homa v. Friendly Mobile Manor, Inc., 93 Md.App. 337, 612 A.2d 322, 333 (1992) (quoting Brager v. Levy, 122 Md. 554, 90 A. 102 (1914), which indicates that an agent may not confer apparent authority on himself). All of the evidence produced by TEI, the unsigned trip lease and other documents, were based on Danny Estep's representations, not those of any Aero employee.[13] The only piece of evidence which might be construed against Aero is the fact that when Danny Estep hauled Taft's goods, the truck was labeled with Aero's name and ICC number. TEI might contend that the existence of this labelling was an omission to act by Aero sufficient to confer apparent authority.
However, the fact that Gary Estep's truck was labelled with Aero identification is insufficient, by itself, to defeat summary judgment. TEI has not produced any evidence indicating that a truck's label is dispositive, within the industry, or that it was reasonable for TEI to assume that, because the truck contained Aero's identification, Aero was, without limitation, responsible for its contents. In an industry where truck leasing like that done by Gary Estep and Aero is a common practice, it would seem unreasonable for a truck broker, knowledgeable in the industry, to rely solely on a truck's markings when dealing with an employee of the truck's owner. Cf. Chevron, U.S.A., Inc. v. Lesch, 319 Md. 25, 570 A.2d 840, 844-49 (1990) (holding that it was unreasonable for the plaintiffs to assume that an independent gas station had the apparent authority of its named Oil Company where the independence of such stations was "common knowledge"). There is no evidence in the record that such reliance would be reasonable.
Moreover, even if the truck's identification were somehow dispositive, TEI has not produced any evidence indicating that it was Aero's duty to see that its labelling was not displayed when the truck was leased to third parties. Given that the truck was in the possession of the Estep brothers, it would seem that such a duty, if it existed at all, lay with them.[14]
Therefore, whether the duty actually exists or not, there is no evidence in this case which *1219 indicates that Aero was responsible for the truck's contents, merely because its name was on the truck. As it is TEI's responsibility to put forth evidence in support of its apparent authority argument, the failure in proof must be held against it. TEI has failed to create a genuine issue of material fact regarding the issue of Danny Estep's apparent authority. As a result, Aero is entitled to judgment as a matter of law.

III. CONCLUSION
For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Defendant's Motion to Strike is granted in part and denied in part, as indicated.
NOTES
[1] The Amended Complaint was filed on March 27, 1992.
[2] A review of the docket in this case indicates that Aero first filed a Fifth-Party Complaint on November 4, 1991. However, on December 2, 1991, Aero filed a motion seeking the Court's permission to file the Fifth-Party Complaint. The Court granted that motion and, on December 5, 1991, Aero filed a copy of the Fifth-Party Complaint.
[3] The applicability to the eventual carrier of a bill of lading between a consignor and a broker may depend on the language of the bill of lading itself. See Stolt Tank Containers, Inc. v. Evergreen Marine Corp., NO. 88 Civ. 8091(RPP), 88 Civ. 8092(RPP), 1990 WL 199081 (S.D.N.Y. Dec. 7, 1990), aff'd, 962 F.2d 276 (2d Cir.1992). The Court does not rule out the applicability of Stolt Tank Containers to this case. However, Aero has not argued that the bill of lading issued by Anchor International or any other bill of lading applies here; nor, has Aero provided the Court with sufficient facts from which the Court could determine the Stolt Tank Containers case's applicability. For example, the terms of the Anchor International bill of lading have not been made clear, or even discussed.

It may be that Aero could have demonstrated that it is somehow protected by the terms of the bill of lading issued by Anchor International and that that bill of lading contains an applicable limitations period. Of course, to do so would require that Maggard Truck Line, Inc. v. Deaton, Inc., 573 F.Supp. 1388 (N.D.Ga.1983), aff'd in part, 783 F.2d 203 (11th Cir.1986) (table), be distinguished. Such might be accomplished given the terms of an particular bill of lading. As no argument on this issue has been presented, the Court makes no further statement on the issue.
[4] Aero's authority does indicate that nine months notice is reasonable. However, that is not to say, for example, that ten, or eleven, or even thirty months notice is unreasonable. Whether the approximately thirty months notice in this case is reasonable or not has not been adequately argued by the parties.
[5] It is undisputed that both of these conditions are here satisfied. Gary Estep leased his tractor and trailer to Aero on a permanent basis. The permanent lease provided that Aero would take full possession, control and responsibility for the operation of the truck and that Aero's identification was to be displayed on the truck. The lease also provided that upon its termination, Gary Estep was to return to Aero all identification and property furnished by Aero. On January 21, 1989, the truck was labelled with Aero's name and ICC number. However, the lease between Aero and Gary Estep provided that Estep was entitled to lease the use of his truck to third parties when the truck was not being used for Aero's purposes.
[6] Whether the ICC currently agrees with these policy statements remains to be seen, given a recent amendment to part 1057 which indicates that section 1057.12(c)(1) should have no bearing on common law interpretations of the employer-employee relationship. See 49 C.F.R. 1057.12(d) (1992).
[7] As the alleged contract was formed in Maryland, the law of that state governs this motion. Although TEI states that it disputes this conclusion, it offers no argument or authority to the contrary.
[8] TEI does not argue that Gary Estep had either the actual or apparent authority to bind Aero.
[9] The procedures followed by Aero regarding independent contractors under permanent lease require that the independent contractor contact the Aero trip lease department in Monroeville, Pennsylvania and tell that office of the authorized ICC motor carrier, the commodity to be shipped, the destination, and the rate. (Mot. for Summ. J. of Fourth-Party Def., Aero, Ex. H, Conto Aff. ¶¶ 14.2.) Aero grants permission to the independent contractor by issuing a release number. (Id. ¶ 14.3) With respect to the incident in dispute, Danny Estep did not call the trip lease department, (id. ¶ 15), and he was not granted permission to carry the load in question or issued a release number, (id. ¶ 16).
[10] TEI has produced the affidavit of Chris Koenig, (see Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Statement of Facts in Supp. of its Mot. for Summ. J., C. Koenig Aff.), which purports to provide the basis for information contained in the trip lease, work order and "Dispatch Inquiry." However, Koenig assumes that the information came from Danny Estep. See note 12, infra. Aside from the fact that Koenig lacks first hand knowledge of the "facts", Danny Estep's statements are insufficient to establish his authority. See discussion infra part II.B.2.c.
[11] Aero also requests the Court to strike the affidavit of Chris Koenig. Since TEI tendered a signed affidavit, the motion is denied. The admissibility of several of Koenig's statements is questionable. However, for the purpose of this motion, the Court considers all of Koenig's statements.
[12] Gary Estep's affidavits, in total, state as follows. The admissible affidavit states:

AFFIDAVIT OF GARY ESTEP
1.
My name is Gary Estep, and I am an independent owner/operator trucking contractor.
2.
I am over the age of eighteen years of age, I am a citizen of the United States of America, and I base the following Affidavit upon my personal knowledge.
3.
At the time of the subject accident, on or about January 21, 1989, my truck (Serial No. E2327HGA14869) was under permanent lease to Aero Trucking, Inc.
4.
At the time of the subject accident, on or about January 21, 1989, Aero Trucking, Inc.'s signs were on my truck.
5.
My brother, Danny Estep, was authorized to drive my truck under the permanent lease to Aero Trucking, Inc. at the time of the subject accident, January 21, 1989.
FURTHER AFFIANT SAYETH NOT.
(Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Reply in Supp. of its Mot. for Summ. J., Ex. F, G. Estep Aff.)
The inadmissible, unsigned affidavit, states:
AFFIDAVIT OF GARY ESTEP
1.
My name is Gary Estep, and I am an independent owner/operator trucking contractor.
2.
I am over the age of 18 years, I am a citizen of the United States of America, and I base the following Affidavit upon my personal knowledge.
3.
On or about January 21, 1989, a truck owned by me (license no. 16UP57) was involved in an accident while hauling printing press units that were being shipped by Taft Equipment Sales Company from Baltimore, Maryland to Columbus, Ohio.
4.
At the time of the accident, that truck (license no. 16UP57) was under permanent lease to Aero Trucking.
5.
A true and accurate copy of that permanent lease is attached as Exhibit A.
6.
I employed my brother, Danny Estep, to drive the load of printing presses from Baltimore to Columbus, and Danny Estep was driving the truck (license no. 16UP57) when the accident occurred. Before he agreed to accept the load of Taft printing presses, Danny Estep advised Aero Trucking (as required by the terms of the permanent lease) that the load was available, and that Gary Estep's truck could accommodate the load.
7.
Aero then authorized Danny Estep to haul the load of printing press units from Baltimore, Maryland to Columbus, Ohio.
8.
After receiving authorization from Aero, Danny Estep, on behalf of Aero, entered into a trip lease with Truckers Express, Inc., to haul the Taft printing press units.
9.
Danny Estep notified Aero of the nature and extent of the January 21, 1989, accident on the next business day after the accident.
10.
This Affidavit is given in support of Defendant Truckers Express, Inc.'s Response to the Motion for Summary Judgment of Aero Trucking, Inc.
Further Affiant saith not.
(Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Statement of Facts in Supp. of its Mot. for Summ. J., G. Estep Aff.)
TEI has made no attempt to explain to the Court why the second of these affidavits is not signed.
[13] For example, TEI has provided the Court with the, originally unsigned, affidavit of Chris Koenig, an operations manager for TEI. (See Fourth-Party Pl. TEI's Resp. to Fourth-Party Def. Aero's Statement of Facts in Supp. of its Mot. for Summ. J., C. Koenig Aff.) Aside from the fact that Koenig appears to lack first hand knowledge of the events at issue, the best Koenig can state is the following:

6.
Based upon my review of these documents [i.e. the trip lease, work order, and "Dispatch Inquiry" completed by TEI] and my familiarity with the normal business practice of Trucker's Express, Inc., the driver represented to Trucker's Express, Inc. that he was driving on behalf of Aero Trucking, Inc.
7.
As such, Truckers Express, Inc. relied on this representation in its belief that it was contracting with Aero Trucking, Inc.
(See id., C. Koenig Aff. ¶¶ 6-7.)
[14] As the Court has previously noted, TEI cannot rely on the labelling requirements and regulations discussed in Kreider Truck Service, Inc. v. Augustine, 76 Ill.2d 535, 31 Ill.Dec. 802, 394 N.E.2d 1179 (1979). Those regulations have been repealed.