**LIME CITY MUTUAL INSURANCE ASSOCIATION et al.**

**v.**

**MULLINS et al.; Jones Motor Group, Inc., Appellant; Progressive Casualty Insurance Company, Appellee.**

[Cite as *Lime City Mut. Ins. Assn. v. Mullins* (1992), 83 Ohio App.3d 517.]

Court of Appeals of Ohio,
Wood County.

No. 92WD012.

Decided Nov. 6, 1992.

518

---

*Keith J. Watkins,* for appellant Jones Motor Group, Inc.

*David W. Stuckey,* for appellee Progressive Casualty Insurance Company.

---

SHERCK, Judge.

This is an appeal from an order of the Wood County Court of Common Pleas which granted summary judgment to an insurance company that had issued a liability policy covering a truck driver's "non trucking use" of his vehicle. Because we find the trial court properly found that the truck driver was operating his rig "in the business of" his employer at the time of the accident which gave rise to this suit, we affirm the trial court's decision.

Appellant is Jones Motor Group, Inc., a self-insured trucking company which brings this appeal from an order finding it the liable insurer for one of its leased trucks. Appellee is Progressive Casualty Insurance Company, which issued a policy on the same truck. The policy which appellee issued covered appellant's truck when it was not engaged in the act of trucking.

George McCullough III is the owner and operator of a semi-tractor trailer truck which is under exclusive lease to appellant. On April 10, 1990, McCullough delivered a load to appellant's terminal in Whitehouse, Ohio. After unloading, McCullough telephoned a dispatcher at appellant's Canton, Ohio terminal to see if another load was available. He was informed that no loads were available, but that he would be "put on the board," indicating that he was in line with other truckers for future loads. McCullough informed the Canton dispatcher that he intended to return to his home in Dundee, Michigan, and requested that he be informed as to when a load would be available for him.

On April 11, 1990, McCullough telephoned the Canton dispatcher and was again advised that no load was available for him. On April 12, 1990, the Canton dispatcher told McCullough that he was next in line for a load to Chicago. It was at this point that McCullough opted to drive to Canton so as to be readily available when a load was assigned. As McCullough was driving to the Canton terminal, he was involved in a collision near the city of Perrysburg, Ohio, with another vehicle operated by Larry M. Mullins. As a result of the collision, Mullins's vehicle left the highway and struck a house owned by Denford and Darlene Tucker.

The Tuckers and their subrogee, Lime City Mutual Insurance Association, brought suit against Mullins and his employer, Midwest Environmental Control, Inc. The Tuckers also sued McCullough and appellant Jones Motor Group, Inc. McCullough cross-claimed against appellant, alleging a duty to insure, and filed a third-party complaint against appellee, Progressive Casualty Insurance Company, seeking a declaration of indemnification for losses attributable to McCullough. Appellant filed a similar third-party complaint against appellee seeking indemnification. In the trial court both appellant and appellee moved for summary judgment. Appellant argued that McCullough's trip to Canton was a non-trucking use of the leased vehicle and for that reason appellee is responsible to insure McCullough. Appellee pointed to exclusionary language in an endorsement to its policy with McCullough which provides:

"1. The following exclusions are added:

"This insurance policy does not apply to:

" * * *

"b. A covered 'auto' while *used in the business of* anyone to whom the 'auto' is rented. * * * " (Emphasis added.)

Appellee argued McCullough was using his vehicle in the business of one to whom it had been rented; therefore, appellee was not obliged to provide insurance.

On November 13, 1991, the trial court entered a decision and order granting summary judgment to appellee and denying appellant's cross-motion for summary judgment. Following a finding by the trial court that there was no just reason for delay, appellant perfected this appeal. Appellant cites three assignments of error:

"I. The court below erred to the prejudice of appellant in granting appellee's motion for summary judgment.

"II. The court below erred to the prejudice of appellant in failing to hold that as a matter of law, the term 'used in the business of' in appellee's policy is susceptible of different interpretations and ambiguous.

"III. In the alternative, the court below erred to the prejudice of appellant, because reasonable minds could reach the conclusion that McCullough was not 'using' his truck 'in the business of' appellant at the time of the accident, as contemplated by the parties in the contract of insurance."

As appellant's second and third assignments of error are essentially components of its first assignment, which contests the grant of summary judgment, all will be discussed together.

The trial court found that appellee was entitled to a summary judgment. The rules governing motions for summary judgment pursuant to Civ.R. 56 are well established. Three factors must be demonstrated:

"(1) [T]hat there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." (Footnote omitted.) *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8

O.O.3d 73, 74, 375 N.E.2d 46, 47. See, also, *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794.

Between appellant and appellee no facts are in dispute. The sole question is whether McCullough was using his vehicle "in the business of" appellant trucking company. If he was, then the trial court did not err in finding that appellee was entitled to judgment as a matter of law.

 Appellant makes two arguments. First, appellant maintains that the trial court erred by initially failing to find the phrase "used in the business of" to be ambiguous. This is a significant assertion because in cases where the terms of a contract are clear and unambiguous, courts may construe those terms as a matter of law. *Inland Refuse Transfer v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272.

Our research concerning the phrase "used in the business of" shows that phrase to be commonly used in insurance contracts. Numerous courts within and without this state have considered the language. See *Johnson v. Angerer* (1968), 16 Ohio App.2d 16, 18, 45 O.O.2d 10, 11, 240 N.E.2d 891, 892; *Overly v. Am. Fid. & Cas. Co.* (App.1961), 89 Ohio Law Abs. 129, 130, 184 N.E.2d 925, 926; *Hartford Ins. Co. v. Occidental Fire & Cas. Co.* (C.A.7, 1990), 908 F.2d 235, 238–239; *Cent. Nat. Ins. Co. v. Liberty Mut. Ins. Co.* (N.D.S.C.1988), 685 F.Supp. 123, 126; *Carriers Ins. Co. v. Griffie* (W.D.Pa.1973), 357 F.Supp. 441, 442; *St. Paul Fire & Marine Ins. Co. v. Frankart* (1977), 69 Ill.2d 209, 13 Ill.Dec. 31, 370 N.E.2d 1058. These courts have found no ambiguity in the phrase and have defined the phrase by its common meaning: that being, "used to further the commercial interests of the lessee," *Hartford Ins. Co. v. Occidental Fire & Cas. Co., supra,* 908 F.2d at 239, or "acting in the scope of his duties * * *," *Overly v. Am. Fid. & Cas. Co., supra,* 89 Ohio Law Abs. at 130, 184 N.E.2d at 927. Therefore, we find that the trial court acted properly in applying the common unambiguous meaning of the questioned phrase to the undisputed facts of the case. Accordingly, appellant's second assignment of error is found not well taken.

Next, we must analyze the court's employment of the phrase with respect to the facts of the case. The trial court found two grounds for determining that McCullough used his rig "in the business of" appellant. By applying the doctrine of *respondeat superior,* the trial court concluded that, "clearly, McCullough was not off on some independent adventure through the countryside. He was operating a truck leased to Jones, headed toward a Jones terminal knowing he was next on the list to haul a load to Chicago, and knowing that timing was important * * *." Additionally, the trial court found that McCullough was acting as statutory employee of appellant as a matter of law by virtue of the syllabus

rules of *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking, Inc.* (1991), 58 Ohio St.3d 261, 569 N.E.2d 1049. We will discuss these findings in reverse order.

■ In *Wyckoff Trucking,* the Ohio Supreme Court established a "bright line" test concerning liability for vehicles leased by interstate motor carriers. At paragraph one of the syllabus, the Supreme Court held that the common-law doctrine of *respondeat superior* as it relates to interstate motor carriers has been superseded by the Interstate Commerce Commission's ("ICC") regulations which form a basis for determining primary liability for the tortious acts of an employee of such carrier. Paragraph two of the *Wyckoff Trucking* syllabus holds that, under ICC regulations, for liability to attach to an interstate carrier-lessee it need only be established that (1) a lease of the vehicle was in effect at the time the cause of action arose, and (2) the vehicle displayed the carrier-lessee's ICC number. Finally, the court held that ICC regulations create an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the carrier lessee's ICC identification number.

In the case at bar, it was undisputed that at the time of the accident in question McCullough's truck displayed appellant's ICC number. Applying *Wyckoff Trucking* to these facts, the trial court determined that an irrebuttable presumption arose that McCullough was in the employ of appellant.

Appellant suggests that, with respect to the parties to this appeal, *Wyckoff Trucking* is not as determinative as appellee and the trial court would have us believe. Appellant points to the final resolution of *Wyckoff Trucking* wherein the case was remanded to the trial court for a declaration of the rights and responsibilities of the parties " * * * with respect to any claims of contribution or indemnification that [appellee] may have, now that this court has declared [appellee] to be the statutory employer * * *." *Id.,* 58 Ohio St.3d at 267, 569 N.E.2d at 1054, fn. 2. More persuasive than this, in our minds, however, is the court's discussion of the effect of its holding. According to the court, the adoption of this principle " * * * removes factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multiple-party litigation, by focusing liability as it does, and forcing the trucking companies to allocate the various indemnification agreements among themselves. Once liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnification from other potentially responsible parties, not the innocent victim." *Id.* at 266, 569 N.E.2d at 1053.

The result envisioned by the *Wyckoff Trucking* court would not be possible by the application of its syllabus rule as urged by appellee and accepted by the trial court.

The *Wyckoff Trucking* syllabus can be reconciled with its expected effect by simply limiting the parties to whom literal application of the syllabus is made. Therefore, as between an "innocent victim" and an interstate carrier-lessee whose ICC number appears on the vehicle, it is the latter who has direct liability for the victim's injuries. However, this does not preclude the interstate carrier-lessee from later seeking contribution or indemnification, as in this instance, from the insurer of the "statutory employee." Accordingly, we hold that while the syllabus rule of *Wyckoff Trucking* is dispositive as between plaintiffs, their subrogee and appellant, it does not govern the relationship between this appellant and this appellee.

Even though we have held that the *Wyckoff Trucking* rule does not determine the outcome of a motion for summary judgment as between these parties, this does not end our analysis. Our examination must continue because the trial court also found that McCullough's truck was "furthering the commercial interests of the lessee" and, therefore, was "used in the business of" the appellant.

Appellant suggests that this legal conclusion be analyzed by considering it in the context of workers' compensation law. For purposes of workers' compensation benefits, appellant argues that an employee who is injured on his way to work is not injured "in the course of his employment." Similarly, appellant argues that an "on-call" employee who is injured in the normal travel to his workplace is not entitled to workers' compensation benefits unless he has been specially called to work. Applying this analogy to the facts of the case at bar would mean that McCullough's travel from his home to Canton was merely that of an "on-call" employee going to work. Thus, appellant asserts, McCullough was not using his vehicle "in the business of" appellant. Therefore, appellee has a duty to insure.

We find it unnecessary to resort to a workers' compensation analogy to determine whether McCullough was using his truck "in the business of" appellant. A traditional analysis of the facts under the doctrine of *respondeat superior* is dispositive.

"Under the doctrine of *respondeat superior*, the 'master' is liable for the negligence of his 'servant' when the latter is engaged in performing the work of the former. * * * A master-servant relationship is extant only when one party exercises the right of control over the actions of another and those actions are directed toward the attainment of an objective which the former seeks. * * * For the relationship to exist, it is unnecessary that such right of control be

exercised; it is sufficient that the right merely exists." *Baird v. Sickler* (1982), 69 Ohio St.2d 652, 654, 23 O.O.3d 532, 533, 433 N.E.2d 593, 594–595.

Clearly, McCullough and appellant were in a master-servant relationship sufficient to impute negligence to appellant under the doctrine. There is, however, an exception to the rule. It has long been established that a servant's liability may not be imputed to his master where the servant is not on his master's business, but on a "frolic and detour" of his own. *Joel v. Morrison* (1834), 172 Eng.Rep. 1338. This exception is of little value to appellant, however, because a master remains liable so long as his servant has an intent, "even though it be a subordinate one, to serve the master's purpose * * *." Prosser & Keeton, The Law of Torts (5 Ed.1984) 503.

In the case at bar, McCullough may well have been on his own business when he left appellant's terminal in Whitehouse, Ohio for his home in Dundee, Michigan. When he left his home in Michigan, however, he did so with the knowledge the he was next in line to have a load from Canton to Chicago. Thus, as the trial court stated, McCullough was " * * * not on some independent adventure through the countryside * * *." Instead, he was on his way to perform services for his employer. Whether or not his employer specifically ordered him to Canton is immaterial. It was to appellant's benefit that he be there.

Accordingly, we hold that the trial court properly found McCullough to be operating his vehicle "in the business of" appellant. Appellee's exclusionary clause was effective and, following the dictates set forth in *Harless, supra,* appellee was entitled to a judgment as a matter of law. Accordingly, appellant's first and third assignments of error are not well taken.

*Judgment affirmed.*

GLASSER, P.J., and ABOOD, J., concur.