**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0682n.06

**No. 09-4166**

**FILED**

**Nov 04, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

CAROLINA CASUALTY INSURANCE
COMPANY,

      Plaintiff-Appellant,

v.

PANTHER II TRANSPORTATION, INC.,

      **and**

ZURICH AMERICAN INSURANCE
COMPANY,

      Defendants-Appellees.

                       /

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO**

**BEFORE:** **MARTIN, COLE, and CLAY, Circuit Judges.**

**CLAY, Circuit Judge.** Plaintiff Carolina Casualty Insurance Company appeals from a judgment entered on August 6, 2009 by the United States District Court for the Northern District of Ohio. The court below granted Defendants Panther II Transportation, Inc.'s and Zurich American Insurance Company's summary judgment motion, and denied Plaintiffs' summary judgment motion, holding Plaintiff responsible for damages sustained in the underlying truck accident. Subsequently, Plaintiff appealed the district court's decision and moved this Court to certify a question of law to the Ohio Supreme Court regarding whether *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv.,*

*Inc.*, 569 N.E.2d 1049 (Ohio 1991), controls the outcome in this case. For the reasons stated below we **AFFIRM** the district court's order, and **DENY** Plaintiff's certification motion.

## I. BACKGROUND

### A. Factual Background

On December 2, 2007 a Volvo straight truck ("the truck") driven by Michael Eades, and a car driven by Ronald Runtas collided ("the accident"). Runtas sustained bodily injury. At the time of the crash Eades was operating a truck owned by Work Horse Express, Inc. ("WHE") on long-term lease to Defendant Panther II Transportation, Inc. ("Panther").

Defendant Panther is a motor carrier that transports property in interstate commerce. Panther does not own any of the vehicles it utilizes in its business. Rather, Panther leases vehicles from independent owners. WHE is a fleet operator that leases its trucks to Panther. WHE owned the truck Eades was driving at the time of the accident, and leased it to Panther. The exclusive lease was in effect at the time of the accident, and under its terms WHE could not move the truck without Panther's permission.

Defendant Zurich American Insurance Company ("Zurich") issued Panther an automobile liability policy effective from September 1, 2007 to September 1, 2008 for the vehicles Panther used in its commercial transportation business. Plaintiff Carolina Casualty Insurance Company ("Carolina Casualty") also issued Panther a non-trucking liability insurance policy effective July 7, 2007 to July 7, 2008. This insurance policy covered "Specified Independent Contractors of Panther II Transportation, Inc." Both policies were in effect at the time of the accident.

Panther recruits drivers to operate the trucks it leases. Panther requires that all drivers who seek to operate one of Panther's leased vehicles must be "qualified" by Panther. Panther's "qualifying" procedure is as follows. First, the driver must be "pre-qualified," meeting the applicable Federal Department of Transportation ("D.O.T.") regulations. *See* 49 C.F.R. 391.1. Next, the pre-qualified driver must successfully complete Panther's three day orientation at its headquarters. Only after completing these steps is a driver "qualified."

Eades was a prospective driver for Panther. Approximately one week before the accident a Panther representative determined that Eades was "pre-qualified" to drive for Panther. At this meeting WHE and Eades agreed that, subject to Eades' successful completion of Panther's three day qualifying course, Eades would be placed to drive for Panther. Eades was scheduled to begin orientation at Panther headquarters on December 3, 2007, the day after the accident.

Eades requested to drive the truck to Panther headquarters for orientation because it had a sleeping berth in which he and his girlfriend could sleep, saving them lodging expenses. WHE agreed. Both Panther and WHE instructed Eades to cover Panther's logo and D.O.T. numbers prior to driving the truck. Eades testified that he spent between a twenty and thirty minutes attempting to cover Panther's placards with cardboard and tape, but could not get the tape to stick due to rain. Eades nevertheless decided to drive the truck to Panther's headquarters with Panther's placards displayed. Panther's placards were thus displayed at the time of the accident.

En route to Panther's headquarters to complete his "qualifying" orientation, Eades, in the truck, collided with Runtas causing Runtas bodily injury. Runtas made a claim to Panther for his

injuries. Subsequently, Panther and Zurich demanded that Carolina Casualty cover Runtas' demand under its non-trucking liability policy. Carolina Casualty denied coverage.

**B.      Procedural History**

After denying Panther's and Zurich's request for coverage of the accident, Plaintiff Carolina Casualty filed a declaratory judgment action in federal court based on parties' diversity of citizenship to determine which of Panther's two insurance policies is responsible for covering damages caused by the accident. The parties cross-moved for summary judgment. The district court denied Plaintiff's motion for summary judgment, and granted Defendants' motion, holding Carolina Casualty responsible for providing insurance coverage for the accident. Plaintiff appealed the district court's decision.

## II. DISCUSSION

**A.      Standard of Review**

The Court reviews the district court's award of summary judgment *de novo*. *Sullivan v. Or. Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). The moving party is entitled to summary judgment "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a material issue of fact. "[A] party seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.      Analysis**

This Court has jurisdiction over the case based on the parties' diversity of citizenship, and an amount in controversy greater than $75,000.00. 28 U.S.C. § 1332.

This dispute to determine whether Plaintiff Carolina Casualty or Defendant Zurich is responsible for Runtas' damages is governed by Ohio law. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 623 (6th Cir. 2008). Plaintiff urges that this dispute is governed by the Ohio Supreme Court's decision in *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc*.

In *Wyckoff* the Ohio Supreme Court enunciated the bright line rule that "in tort causes of action involving leased vehicles of interstate motor carriers . . . in order for liability to attach on an interstate carrier-lessee . . . it must be established that at the time the cause of action arose, (1) a lease of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placards listing its I.C.C. numbers." *Wyckoff*, 569 N.E.2d at 1054. Moreover, the Ohio Supreme Court stated that in tort cases there is "an irrebuttable presumption of an employment relationship between carrier-lessee and the driver of the vehicle that displays the I.C.C. identification numbers of the carrier-lessee." *Id*. *Wyckoff* placed liability squarely with the carrier-lessee in a tort action between carrier-lessee and a third-party accident victim. This "removes the factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multi-party litigation." *Id*. at 1053.

The *Wyckoff* irrebuttable presumption governed "tort causes of action involving leased vehicles of interstate motor carriers." *Id.* The holding did not explicitly extend to actions between insurance companies disputing liability for an accident. Since *Wyckoff*, intermediate Ohio appellate courts have split on whether the *Wyckoff* holding extends to such disputes. *Compare Lime City Mut. Ins. Ass'n v. Mullins*, 615 N.E.2d 305, 309 (Ohio Ct. App. 1992) ("*Wyckoff Trucking* . . . does not govern the relationship between insurers."), *and Lakes v. Minor*, 620 N.E.2d 1015, 1018 (Ohio Ct. App. 1993), *with Cincinnati Ins. Co. v. Haack*, 708 N.E.2d 214, 226 (Ohio Ct. App. 1997) ("[T]he [Ohio] Supreme Court's decision in *Wyckoff* . . . could be extended to settle the dispute between the owner's and lessee's insurer."), *and Ohio Cas. Ins. Co. v. United S. Assurance Co.*, 620 N.E.2d 163, 165-66 (Ohio Ct. App. 1993) ("If the doctrine of statutory employment irrefutably establishes the liability of the carrier-lessee, then the doctrine should also establish that the carrier-lessee's insurance company is responsible for the coverage.").

In the absence of clear legal directives from the Ohio Supreme Court, a federal court applying Ohio law must predict what the Ohio Supreme Court would hold. "If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue." *Stanek v. Greco*, 323 F.3d 476, 478 (6th Cir. 2003). The Sixth Circuit previously addressed the extension of *Wyckoff* to disputes between insurance carriers in *Gilstorff v. Top Line Express, Inc.*, No. 96-3081, 1997 U.S. App. LEXIS 780 (6th Cir. 1997). Although the unpublished opinion is not binding precedent, *Gilstorff* may be considered for persuasive value. *Longaberger Co. v. Kolt*, 586 F.3d 459, 468 (6th Cir. 2009). After reviewing the competing interpretations of

*Wyckoff* in the intermediate Ohio appellate courts, the court in *Gilstorff* stated that "because *Wyckoff* itself indicates that the statutory employee may seek contribution and/or indemnification from the other potentially responsible parties," limiting "*Wyckoff* to its literal application as between the innocent victim and an interstate carrier-lessee whose ICC number appears on the vehicle . . . is more consistent with the holding in *Wyckoff*." *Gilstorff*, 1997 U.S. App. LEXIS 780, at *10-11.

As pointed out by the *Gilstorff* court, the policy rationales and language of *Wyckoff* itself suggest that the Ohio Supreme Court would decline to extend *Wyckoff* to disputes between insurers. *See also Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp. 2d 579 (E.D.Pa. 1999) (applying Ohio law to an insurance dispute subsequent to a truck accident). *Wyckoff* states that the purpose of the presumption is to "relieve[] the innocent victim from the sometimes interminable delays that accompany multiple-party litigation . . . [and] fix liability for the accident instead of essentially forcing the innocent victim to sue everyone in order to redress his injuries and damages." *Wyckoff*, 569 N.E.2d at 1053. The rule was based on the premise that insurance companies would disagree over which policy covered the accident, and the Ohio Supreme Court simply wanted to save the victim from delay. This rationale does not justify extending *Wyckoff*. Although *Wyckoff* recognized the inevitability of disputes between insurers, the decision was not directed at solving insurers' disagreements.

*Wyckoff*'s language also strongly suggests that the Ohio Supreme Court never intended to extend the irrebuttable presumption to anyone other than the victims of truck accidents. The Ohio Supreme Court stated that the presumption's purpose was "focusing liability . . . and forcing the trucking companies to allocate the various indemnification agreements among themselves. Once

7

liability is fixed on the statutory employer, it is the statutory employer who must seek contribution or indemnifcation from other potentially responsible parties, not the innocent victim." *Id.* Based on the policy rationales and the language contained in *Wyckoff*, we think the Ohio Supreme Court would decline to extend *Wyckoff* to disputes between insurers.

Once we determine that *Wyckoff* does not control in this case, we must turn to the language of the insurance policies to determine whether Carolina Casualty or Zurich has primary responsibility for the accident.

Plaintiff Carolina Casualty provided Panther with non-trucking insurance that covered the truck when it was not being used in Panther's business. Carolina Casualty's policy stated under the "Other Insurance" section of its "Business Auto Coverage Form:" "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance." Plaintiff's Statement of Uncontested Facts, Exhibit 7 at 24, *Carolina Cas. Ins. Co. v. Panther II Transp., Inc.*, 08-0138, (N.D. Ohio Aug. 6, 2009). Therefore, one of the exceptions clauses in the insurance contract must apply for Carolina Casualty not to be responsible for damages due to an accident involving a covered auto. In an endorsement modifying the "Business Auto Coverage Form" entitled "Insurance for Non-Trucking Use," Carolina Casualty stated, in relevant part, that the endorsement added "[t]he following exclusions" to its insurance policies: "This insurance does not apply: (a) While the covered "auto" is used to carry property in any business." *Id.* at 37.

Whether responsibility for damages due to the accident is excepted from Carolina Casualty's policy turns on whether Eades' driving the truck to Panther's mandatory orientation qualifies as engaging in Panther's "business" as intended by the exceptions to Carolina Casualty's policy.

Under Ohio law, in an insurance dispute "[t]he starting point for determining coverage is the language of the insurance policies." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 840 (Ohio 2002). Ohio law dictates that "insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by parties." *Id*. at 840-41. Moreover, "Ohio law requires . . . interpret[ing] exclusions as applying only to that which is clearly intended to be excluded." *Id.*

Both Ohio Courts and this Court have interpreted the term "business" in insurance contracts' exclusionary clauses under Ohio law. At least one Ohio appellate court has stated that "the phrase 'used in the business of' . . . [is] commonly used in insurance contracts. Numerous courts within and without [Ohio] have considered the language. These courts have found no ambiguity in the phrase and have defined the phrase by its common meaning: that being, 'used to further the commercial interests of the lessee.'" *Lime City Mut. Ins. Ass'n*, 615 N.E.2d at 307-08.

Courts construing Ohio law have interpreted the parameters of the lessee's "commercial interests" relatively expansively. *See Auto-Owners Ins. Co. v. Redland Ins. Co.*, 549 F.3d 1043 (6th Cir. 2008) (determining that a truck driver who had completed a delivery for lessee at night, but scheduled to pick up another load for lessee in the morning was furthering lessee's commercial interests when he was en route to a motel to sleep for the night); *Lime City Mut. Ins. Ass'n.*, 615 N.E.2d at 309 (stating that "because a master remains liable so long as his servant has an intent, even though it be a subordinate one, to serve the master's purpose" the lessee and its insurance company were liable for damages from an accident that occurred when the driver was heading towards the

9

dispatch area so as to be close to an as-of-yet unassigned load). *But see Roseberry v. Balboa Ins. Co.*, 627 N.E.2d 1062, 1065 (Ohio Ct. App. 1993) (refusing to extend the exclusionary phrase "further commercial interest" to a situation in which the driver had delivered his empty trailer subsequent to making a delivery and was en route home when an accident occurred as the driver "was not under [lessee's] control at the time of the accident because he was not en route, under dispatch, or in the service of [lessee].").  However, none of these cases provides a close analogy to this case.  The drivers in these cases were employed by the lessees, and generally on active duty for the lessees, although not necessarily actively engaged in the lessees' business at the moment of the accident.  Eades, in contrast, had not been hired or even qualified to drive for Panther at the time of the accident.  Moreover, like the driver in *Roseberry* who was effectively using the truck as a private means of transportation home after dropping off his trailer, Eades was using the truck as his private transportation to the orientation at Panther's headquarters.  Although Plaintiff makes the unsupported assertion that Panther wanted the truck driven to headquarters, it is undisputed that Eades requested to drive the truck to orientation, and his motive for so doing was to save on motel expenses for himself.  Unlike the driver in *Lime City Mut. Ins. Ass'n*, lessee's business interests were not relevant but subordinate to Eades' personal interests; they were simply not relevant.  Any benefit that Panther may potentially have gotten from Eades' driving of the truck was so remote as to be legally irrelevant.  Based on courts' interpretation of "in the business of" under Ohio law, Eades was not driving the truck "in the business" of Panther at the time of the accident.

Finally, Plaintiff requests that this Court certify the question of *Wyckoff*'s applicability to disputes between insurance companies to the Ohio Supreme Court.

10

The decision whether or not to certify a question to state court "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). *See also Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009); *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). The federal court hearing the case has the discretion to decide whether to certify. Even "where there is doubt as to local law and where the certification procedure is available, resort to it is [not] obligatory." *Lehman Bros.*, 416 U.S. at 390-91.

The timing of Plaintiff's certification motion weighs heavily against certification. Plaintiff in this case filed its motion for certification after the district court's decision, and after submitting its appellate briefs to the Court. Although this delay does not prevent the Court from granting the certification motion, as the decision lies within the court's discretion, *Transamerica*, 50 F.3d at 372, "[l]ate requests for certification are disfavored." *Shaheen*, at *22-23 (citing *Pennington*, 553 F.3d at 450). Untimeliness is itself a reason to deny the motion. In this case, Plaintiff's certification motion will be denied.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's order, and **DENY** Plaintiff's certification motion.